PRESENT:  Lemons, C.J., Goodwyn, Mims, McClanahan, Powell, and Kelsey, JJ., and Millette, S.J.

NAVAR, INC.

v.  Record No. 150522

OPINION BY
JUSTICE CLEO E. POWELL
April 28, 2016

FEDERAL BUSINESS COUNCIL, ET AL.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Brett A. Kassabian, Judge

Navar, Inc. ("Navar") appeals a $1.25 million judgment for breach of a non-disclosure agreement and misappropriation of trade secrets in violation of the Virginia Uniform Trade Secrets Act ("the Act"), Code § 59.1-336 et seq.  Federal Business Council ("FBC") and Worldwide Solutions, Inc. ("Worldwide Solutions") assign cross-error to the trial court's judgment notwithstanding the verdict finding that a teaming agreement was not enforceable as a contract.

I.  BACKGROUND

The United States Defense Threat Reduction Agency ("Defense Agency") uses private contractors to provide labor and materials for conferences and events it hosts domestically and abroad.  In 2011, the Defense Agency sought a prime contractor to provide event-planning services for a five-year term.  Under Section 8(a) of the Small Business Act, 15 U.S.C. § 631 et seq., federal agencies may conduct competitions for contracts in which only certain companies may compete ("set-aside contract") through the business development program.  See 13 C.F.R. Part 124 (2016).  The Defense Agency treated the event-planning contract as a set-aside contract that was limited to an Alaska Native Corporation ("ANC") as defined in 13 C.F.R. § 124.3.

FBC is a contractor that provides planning services for government conferences held domestically. Worldwide Solutions is a contractor that manages government conferences that are held abroad. FBC and Worldwide Solutions (collectively "Plaintiffs") were ineligible to bid for the work under the Small Business Act. Plaintiffs agreed to offer their services as joint subcontractors to a company eligible to bid as prime contractor on the Defense Agency contract.

On March 21, 2011, Plaintiffs approached Concentric Methods, LLC, ("Concentric") a wholly owned subsidiary of an ANC, about serving as the prime contractor for a bid. Subsequently, Plaintiffs and Concentric worked on a proposal for the Defense Agency, including preparation of a slide presentation. On March 23, 2011, Worldwide sent a draft of the slide presentation to the Defense Agency for comment. On March 24, 2011, the Plaintiffs and Concentric met with the Defense Agency about their proposal. Following this meeting, Concentric discovered it was ineligible to serve as a prime contractor and substituted its corporate affiliate, Navar, as the prime contractor for the proposal.

On May 18, 2011, Plaintiffs entered into a non-disclosure agreement ("NDA") with Navar. The NDA provided that "confidential information" shall not be "disclosed by the recipients to any third parties not intended, nor otherwise used by the recipient for any purpose inconsistent with the intention of the parties stated herein without the prior written consent of the disclosing party."

On May 20, 2011, the parties attended a meeting with the Defense Agency to discuss their proposal. The parties used a 38-page slideshow during their presentation to the Defense Agency. This slide presentation was similar to the presentation that Plaintiffs and Concentric had drafted for their previous meeting with the Defense Agency prior to Navar's substitution for

Concentric. The Plaintiffs supplied the majority of the content for the slideshow with FBC providing 80 to 90 percent and Worldwide Solutions providing 10 percent.

On May 24, 2011, the parties entered into a Teaming Agreement, which provides that if Navar were awarded a prime contract then it would negotiate in good faith with Plaintiffs and, "upon arriving at prices, terms and conditions acceptable to the parties," enter into subcontracts. The Teaming Agreement stated that it will expire if the parties were unable, "negotiating in good faith to reach agreement on the terms of a subcontract." The "Statement of Work," Exhibit A to the Teaming Agreement, also provides that "[Navar] will receive, at a minimum, 51% of the labor hours and labor dollars in accordance with directed [section] 8(a) awards."[1]

On April 13, 2012, the Defense Agency awarded Navar a five-year prime contract with a maximum value of $55 million ("prime contract"). In November 2012, negotiations broke down between Navar and the Plaintiffs over the division of work through subcontracts. Navar did not extend subcontracts to either Plaintiff. The Plaintiffs then filed a seven-count complaint against Navar, asserting claims for breach of contract, unjust enrichment, quantum meruit, and trade secret misappropriation.

The Plaintiffs alleged, as relevant here, that Navar breached the NDA (Count I) by using their confidential information to obtain the Defense Agency contract, but not sharing work with them; breached the Teaming Agreement (Count II) by failing to award a subcontract to them; and violated the Act (Counts VI & VII) by misusing their trade secrets to win and perform the

---

[1] 13 C.F.R. § 124.510(a) states, "To assist the business development of Participants in the 8(a) BD program, an 8(a) contractor must perform certain percentages of work with its own employees. These percentages . . . are the same as those established for small business set-aside prime contractors, and are set forth in § 125.6 of this title." 13 C.F.R. § 125.6(a)(1) requires the prime contractor in a contract for services to "perform at least 50 percent of the cost of the contract incurred for personnel with its own employees." 13 C.F.R. § 125.6(a)(2) also requires the prime contractor in a contract for supplies or products "will perform at least 50 percent of the cost of manufacturing the supplies or products."

prime contract. Plaintiffs also asserted equitable claims as alternatives to the breach of contract claims (Counts III–V).

At the time of trial, the Defense Agency, under the prime contract, had ordered $18.6 million in work from Navar and Navar had received $2 million in payments under the prime contract. Worldwide Solutions presented evidence that its profit margin for the type of work it would have completed under a subcontract was approximately 10 percent. FBC presented evidence that its profit margin was between 17 and 25 percent for such work. Based on this evidence, Plaintiffs contended they were entitled to their lost profits for breaches of the NDA and Teaming Agreement. The Plaintiffs did not present expert testimony to support their damages claim.

Aside from evidence about the May 20, 2011 meeting with the Defense Agency, the Plaintiffs did not present any evidence that Navar used their confidential information to obtain the prime contract. On cross-examination, FBC's president, Mike O'Neill, testified that he saw evidence from internal documents produced during discovery that suggested Navar had used information shared by FBC to perform the prime contract. However, O'Neill neither identified nor described those documents with any specificity. At the close of the Plaintiffs' evidence, the trial court denied Navar's motion to strike the evidence as insufficient to prove the breach of contract (Counts I & II) and trade secrets claims (Counts VI & VII).

For Counts I and II, the jury found that Navar had breached the NDA and Teaming Agreement and awarded each Plaintiff a total of $500,000 in damages for both counts combined. For Count VI, the jury found that Navar had misappropriated FBC's trade secrets under the Act and awarded $250,000 in damages. For Count VII, the jury found that Navar had not misappropriated Worldwide Solutions's trade secrets.

Navar filed a motion to reconsider the trial court's ruling on the motion to strike. The trial court set aside the verdict on breach of the Teaming Agreement (Count II) because it determined the agreement was unenforceable as an "agreement to negotiate open issues in good faith within a framework . . . I cannot conclude that it is anything other than that as opposed to an enforceable contract in this case that gives rise to a claim that should have gone to the jury as to a breach of contract." The trial court denied the motion to reconsider as to Count I and Count VI and entered judgment in favor of Plaintiffs in the total amount of $1.25 million.

## II. ANALYSIS

> When the sufficiency of a plaintiff's evidence is challenged by a motion to strike, the trial court should resolve any reasonable doubt as to the sufficiency of the evidence in plaintiff's favor and should grant the motion only when "it is conclusively apparent that plaintiff has proven no cause of action against defendant," or when "it plainly appears that the trial court would be compelled to set aside any verdict found for the plaintiff as being without evidence to support it."

Saks Fifth Ave., Inc. v. James, Ltd., 272 Va. 177, 188, 630 S.E.2d 304, 311 (2006) (quoting Williams v. Vaughan, 214 Va. 307, 309, 199 S.E.2d 515, 517 (1973)).

## A. Non-Disclosure Agreement

Navar argues that it did not breach the NDA and that Plaintiffs failed to prove any monetary damages they incurred due to the breach of the NDA.[2] "'[T]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.'" Ulloa v. QSP, Inc., 271 Va. 72, 79, 624 S.E.2d 43, 48 (2006) (quoting Filak v. George, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004)). "A plaintiff

---

[2] Navar erroneously recites Count VII (finding for Navar on the Trade Secrets Act) in its assignment of error instead of Count VI (finding for Worldwide Solutions on the Trade Secrets Act); we have addressed Count VI.

5

. . . must prove two primary factors relating to damages. First, a plaintiff must show a causal connection between the defendant's wrongful conduct and the damages asserted. Second, a plaintiff must prove the amount of those damages by using a proper method and factual foundation for calculating damages." Saks Fifth Ave., Inc., 272 Va. at 189, 630 S.E.2d at 311 (citations omitted).

Plaintiffs argue that Navar breached the NDA by using their confidential information to obtain the prime contract for itself without then hiring Plaintiffs as subcontractors to the prime contract. However, nothing in the NDA asserts that that was the intent of the parties. Recital B of the NDA states: "Each Party hereto desires to disclose to the other certain information relating to teaming discussions for research and development enterprise event and conference support, each party receiving the other's proprietary information shall only use the information to evaluate whether to enter into and complete the aforementioned matter and shall not use it for any other reason." Plaintiffs failed to show at trial how Navar misused their confidential information under the NDA. Plaintiffs presented no evidence of a misappropriation within the meaning of Code § 59.1-336. Plaintiffs also failed to show how the NDA required Navar to use Plaintiffs as subcontractors. Based on this evidence, Navar cannot be found liable for breach of contract. The trial court erred in denying the motion to reconsider Navar's motion to strike.

Regarding Count VI, Navar did not disclose or use the trade secrets in violation of the Trade Secrets Act. At the time of the prime contract award to Navar, Navar was authorized to use the information by the NDA. Nothing in the Trade Secrets Act or the NDA required Navar to use Plaintiffs as subcontractors, which is Plaintiffs' primary complaint.[3]

---

[3] Because there was no breach and therefore no damages, assignment of error 2 regarding remittitur of the amount of damages awarded in Counts I and VI is moot.

B. Teaming Agreement

The trial court did not err in finding the Teaming Agreement was unenforceable as a binding contract. This Court said in Allen v. Aetna Casualty & Surety Co., 222 Va. 361, 281 S.E.2d 818 (1981):

> [T]here must be mutual assent of the contracting parties to terms reasonably certain under the circumstances in order to have an enforceable contract. Here, there was no such mutual commitment. No sum was specified in the agreement, nor was any method or formula alleged for determining the amount payable in [the transaction]. A court should not determine the terms . . . upon which the parties might ultimately agree. As the agreement provided no reasonable basis for affording a remedy for its breach, it is too vague and indefinite to be enforced.

Id. at 364, 281 S.E.2d at 820 (citations omitted).

In W.J. Schafer Assocs. v. Cordant, Inc., 254 Va. 514, 520, 493 S.E.2d 512, 515 (1997), the Court found a teaming agreement unenforceable as a contract because it

> show[ed] by its express terms that it was not an enforceable contract for the sale of digitizers. There was no mutual commitment by the parties, no obligation on the part of Ogden [part of the teaming agreement] to sell the digitizers or on the part of Cordant to purchase them, no agreed purchase price for the product, and, indeed, no assurance that the product would be available when needed. It follows, therefore, that, if the Teaming Agreement was not enforceable against Ogden as a contract for the sale of goods, it also was not enforceable against Schafer under the claim that Schafer was Ogden's delegate within the meaning of the Uniform Commercial Code, i.e., Code § 8.2-210(1).

The same logic was also applied by the United States District Court for the Eastern District of Virginia in Cyberlock Consulting, Inc. v. Info. Experts, Inc., 939 F. Supp. 2d 572, 578 (E.D. Va. 2013), aff'd, No. 13-1599, 2014 U.S. App. LEXIS 322 (4th Cir. Jan. 8, 2014). Applying Virginia contract law, the court said:

> [I]t is "well settled under Virginia law that agreements to negotiate at some point in the future are unenforceable." Beazer Homes Corp. v. VMIF/Anden Southbridge Venture, 235 F. Supp. 2d 485,

7

490 (E.D. Va. 2002). Accordingly, "an agreement to 'negotiate open issues in good faith' to reach a 'contractual objective within [an] agreed framework' will be construed as an agreement to agree rather than a valid contract." Virginia Power Energy Mktg., Inc. v. EQT Energy, LLC, 3:11CV630, 2012 U.S. Dist. LEXIS 98553, at *4 (E.D. Va. July 16, 2012) (quoting Beazer, 235 F. Supp. 2d at 491).

In Schafer and Cyberlock, teaming agreements were found to be unenforceable as contracts because they merely set out agreements to negotiate future subcontracts in good faith. Here, the Teaming Agreement does not contain a sum, or any reasonably certain method for determining a sum, or any requirement that Plaintiffs and Navar mutually agreed that Plaintiffs would be the actual subcontractors hired by Navar once the prime contract was awarded. Plaintiffs did not present any evidence to support their argument beyond arguing that they were entitled to a full 49% workshare because the Teaming Agreement stated Navar would "receive, at a minimum, 51% of the labor hours and labor dollars." This figure, however, may simply reflect attention to the requirement found in 13 C.F.R. § 125.6(a)(1) that the prime contractor "perform at least 50 percent of the cost of the contract incurred for personnel with its own employees." Further, plaintiffs did not present any expert evidence to support their argument that the standard in the industry was that subcontractors were guaranteed 49% of the work share. The evidence showed email exchanges mentioning workshare percentages, but no written documents were produced regarding any actual agreement governing the workshare split.

The rules of contract law do not apply to the Teaming Agreement because it is merely an agreement to agree to negotiate at a future date. Accordingly, Plaintiffs are not entitled to damages for breach of the Teaming Agreement.

### III. CONCLUSION

For the foregoing reasons, we will reverse the judgment of the trial court denying Navar's motion to strike Counts I and VI of the complaint that allege breach of the non-disclosure

8

agreement and a violation of the Virginia Trade Secrets Act, respectively, and enter judgment for Navar on both of those counts. Additionally, we will affirm the judgment of the trial court for Navar notwithstanding the verdict on Count II of the complaint alleging breach of the Teaming Agreement.

Reversed in part,
affirmed in part,
and final judgment.