**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-1871**

DRUMMOND COAL SALES, INC.,

Plaintiff - Appellee,

v.

NORFOLK SOUTHERN RAILWAY COMPANY,

Defendant - Appellant.

**No. 20-1920**

DRUMMOND COAL SALES, INC.,

Plaintiff - Appellant,

v.

NORFOLK SOUTHERN RAILWAY COMPANY,

Defendant - Appellee.

Appeals from the United States District Court for the Western District of Virginia, at Roanoke. Michael F. Urbanski, Chief District Judge. (7:16−cv−00489−MFU)

Argued: May 6, 2021                                Decided: June 29, 2021

Before GREGORY, Chief Judge, HARRIS, and QUATTLEBAUM, Circuit Judges.

_____

Affirmed by published opinion. Judge Quattlebaum wrote the opinion, in which Chief Judge Gregory and Judge Harris joined.

_____

**ARGUED:** Carter Glasgow Phillips, SIDLEY AUSTIN LLP, Washington, D.C., for Appellant/Cross-Appellee. Huey Thomas Wells, III, STARNES DAVIS FLORIE LLP, Birmingham, Alabama, for Appellee/Cross-Appellant. **ON BRIEF:** R. Braxton Hill, IV, Michael W. Smith, Roman Lifson, CHRISTIAN & BARTON, LLP, Richmond, Virginia; Raymond A. Atkins, Tobias S. Loss-Eaton, Cody L. Reaves, SIDLEY AUSTIN LLP, Washington, D.C., for Appellant/Cross-Appellee. William A. Davis, III, Benjamin T. Presley, STARNES DAVIS FLORIE LLP, Birmingham, Alabama; Monica T. Monday, W. David Paxton, GENTRY LOCKE, LLP, Roanoke, Virginia, for Appellee/Cross-Appellant.

_____

QUATTLEBAUM, Circuit Judge:

After a six-day trial, a jury returned a special verdict finding Norfolk Southern Railway Company materially breached its contract with Drummond Coal Sales, Inc. Based on that finding of material breach, the district court entered a declaratory judgment for Drummond and awarded limited equitable relief. In this consolidated appeal, we examine those two related issues—the district court's decision that the jury's finding of material breach was supported by substantial evidence and the equitable relief that flowed from that decision. On appeal, Norfolk Southern takes issue with the jury's finding of material breach, while Drummond challenges the district court's award of equitable relief. For reasons set forth below, we affirm the district court on both issues.

## I.

This case arises out of a contract to ship coal to utility companies. Traditionally, when a utility company buys coal, it involves two separate contracts—one for the purchase of coal (between the utility company and the coal supplier) and another for the shipment of coal (between the utility company and the railroad). Drummond, an international supplier of coal mined in Colombia, sought to change that paradigm by offering a one-stop-shop contract for utility companies to both purchase and ship their coal with Drummond.

To make this possibility a reality, Drummond entered into a contract with Norfolk Southern for guaranteed shipping services at fixed rates (the "Agreement").[1] The primary benefit of the Agreement to Drummond was that it could price a one-stop-shop contract because the shipping cost, previously unknown to Drummond, was now a known quantum. Article 13 of the Agreement set out the rates Norfolk Southern would charge Drummond to deliver the coal from the port to the utility.[2] In exchange for Norfolk Southern's promised rates, Drummond promised to ship a certain amount of coal each year under the Agreement with Norfolk Southern. If Drummond did not meet its annual quota, it agreed to pay Norfolk Southern shortfall fees.

The Agreement did not prohibit Norfolk Southern from entering into or shipping coal under other third-party utility contracts. In fact, it expressly allowed it to do so. Behind the scenes, however, Norfolk Southern had contracts with certain utilities that confidentially precluded those utilities from purchasing and shipping coal via the Agreement without incurring liquidated damages.

After Drummond and Norfolk Southern entered into the Agreement, the coal industry in the United States experienced significant change. Federal regulation of the

---

[1] The Agreement was entered into on January 20, 2006, and was to run through July 31, 2016. It was amended on January 12, 2010, and the term was extended three more years through December 31, 2019. Additionally, the Agreement provided that Virginia law controlled.

[2] "The base transportation rate for each net ton of Commodity transported under this Contract shall be based upon Origin, Destination and shipment characteristics, all as more particularly set forth in Appendices A-H (the 'Base Rates')." J.A. 487.

4

industry forced many utilities to close or substantially reduce or eliminate their use of coal. In contrast, the absence of such regulations in other countries made those markets more attractive for coal suppliers.

From 2010 to 2014, Drummond did not ship any coal under the Agreement. Why it did not do so goes to the heart of the dispute here. Norfolk Southern claims Drummond made a business choice. According to Norfolk Southern, Drummond elected to ship coal to customers outside the United States where the market was more lucrative. Drummond, on the other hand, claims that Norfolk Southern's confidential contracts with utilities sabotaged its ability to use the one-stop-shop rates bargained for in the Agreement.

Regardless of the reason Drummond did not ship under the Agreement, Drummond paid Norfolk Southern the required shortfall fees from 2010 to 2014. Then again, in years 2015 and 2016, Drummond did not ship any coal under the Agreement. But Drummond did not pay the required shortfall fees for those two years.

In anticipation of Norfolk Southern's next move—a likely claim for the 2015 and 2016 shortfall fees—Drummond preemptively filed suit seeking a declaration of its rights and a variety of equitable relief. After summary judgment, only two theories remained: declaratory relief excusing Drummond's performance due to Norfolk Southern's breach of the Agreement and rescission based on Norfolk Southern's breach.

At trial, Drummond argued that its obligation to pay shortfall fees under the Agreement should be excused because Norfolk Southern breached the Agreement based on three theories—express material breach, prevention and breach of the implied duty of good faith and fair dealing. The district court issued a special verdict form covering these

5

theories. In pertinent part, the jury was asked to decide whether (1) "Norfolk Southern actively work[ed] to prevent Drummond from shipping coal using the rates set forth in [Article 13 of the Agreement]"; (2) Norfolk Southern's conduct constituted a breach of Article 13 of the Agreement, "either expressly or under the implied covenant of good faith and fair dealing"; and (3) the breach of the Agreement was material and precluded Drummond from "receiv[ing] the benefit of its bargain." J.A. 1660–61. As to all these questions, the jury answered yes. Based on that, the jury was then asked when the first material breach occurred and answered July 1, 2010. J.A. 1661.

Following those factual findings, Drummond moved under Federal Rule of Civil Procedure 58, for "entry of judgment which (i) states that Drummond is excused from paying any further shortfall fees under the contract; (ii) orders Norfolk Southern to pay Drummond $49,239,107.03, which represents the amount of shortfall fees paid by Drummond since July 1, 2010 . . . and an award of 6% prejudgment interest on those payments[;] . . . and (iii) provides that post-judgment interest will accrue on the entire amount owed by Norfolk Southern." J.A. 2451–52. At the same time, Norfolk Southern moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), or in the alternative, a new trial under Federal Rule of Civil Procedure 59(a).

The district court began by rejecting Norfolk Southern's Motion for Judgment as a Matter of Law. Norfolk Southern first argued there was insufficient evidence for the jury to find that it materially breached the Agreement under any of the three theories presented

6

at trial. But the district court found sufficient evidence of express material breach.[3] Focusing on Article 13 of the Agreement, the district court found that a reasonable jury could determine that the Article 13 rates were the primary benefit of the Agreement and that Norfolk Southern's conduct defeated an essential purpose of the Agreement— Drummond's ability to use those rates.

The district court then turned to Norfolk Southern's statute-of-limitations argument. Rejecting this argument as well, the district court explained that, although more than five years had passed after the first breach, the five-year Virginia statute of limitations did not bar the action because Norfolk Southern's actions did not constitute a continuous breach. Rather, Norfolk Southern breached the contract "at discrete intervals – specifically, each time the shortfall fees came due." J.A. 2457. As such, according to the district court, "Norfolk Southern breached the contract within the five-year statute of limitations period and Drummond's claims were timely filed." J.A. 2458. Therefore, the court denied Norfolk Southern's Rule 50(b) Motion.[4]

As to Drummond's Motion for Entry of Judgment, the district court granted Drummond's Motion in part as it related to Drummond being excused from paying shortfall fees for 2015 and 2016 and in future years. The district court, however, declined to rescind

---

[3] Having found one theory of relief supported by substantial evidence, the court declined to address the two additional theories: prevention or breach of the implied duty of good faith and fair dealing.

[4] The district court also denied Norfolk Southern's Rule 59(a) Motion, a ruling not at issue on appeal.

the Agreement entirely, thus denying Drummond the ability to recoup shortfall fees already paid.

Drummond then moved to alter or amend judgment under Federal Rule of Civil Procedure 59(e) seeking complete rescission to recoup the shortfall fees paid from 2010 to 2014. Drummond argued the district court's partial denial of its Motion for Entry of Judgment was error because it was "fundamentally inconsistent" to find Norfolk Southern materially breached the Agreement beginning in 2010 but then prevent Drummond from recouping shortfall fees paid from 2010 to 2014. J.A. 2542. The district court disagreed, declining to rescind the Agreement. Among factors militating against rescission, the district court cited partial performance by Norfolk Southern, the partial release of claims between the parties and Drummond's coal sales overseas.

Norfolk Southern appealed, and Drummond then filed a cross-appeal. The district court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291.

## II.

First, we address Norfolk Southern's appeal. Norfolk Southern insists, as it did below, that the jury's finding was not supported by the evidence, and, therefore, the district court's denial of its Rule 50(b) Motion was improper.

"The denial of a Rule 50(b) [motion] is reviewed *de novo*." *First Union Com. Corp. v. GATX Cap. Corp.*, 411 F.3d 551, 556 (4th Cir. 2005). "When a jury verdict has been returned, judgment as a matter of law may be granted only if, viewing the evidence in a

8

light most favorable to the non-moving party (and in support of the jury's verdict) and drawing every legitimate inference in that party's favor, the only conclusion a reasonable jury could have reached is one in favor of the moving party." *Int'l Ground Transp. v. Mayor & City Council of Ocean City, MD*, 475 F.3d 214, 218–19 (4th Cir. 2007). To prevail, Norfolk Southern must show that there could be no breach of the Agreement under *any* reasonable theory. *See Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors*, *Inc.*, 99 F.3d 587, 599 (4th Cir. 1996) ("An appeals court is abjured to determine whether a jury verdict can be sustained, on any reasonable theory." (internal quotation marks omitted)). With this standard in mind, we turn to Norfolk Southern's two arguments.

## A.

Norfolk Southern first contends there was no evidence from which a reasonable jury could find that Norfolk Southern breached the Agreement. To assess this argument, we return to the jury's finding. Recall that it found "Norfolk Southern actively work[ed] to prevent Drummond from shipping coal using the rates set forth in [the Agreement] . . . and such conduct constitute[d] a breach . . . either expressly or under the implied covenant of good faith and fair dealing[.]" J.A. 1660. The jury also determined that Norfolk Southern's breach, "either individually or in combination with any other breaches," was material "such that Drummond did not receive the benefit of its bargain." J.A. 1661. Because the special verdict form did not require the jury to specify whether Norfolk Southern's conduct violated an express provision of the Agreement or the implied duty of good faith and fair dealing, we address both theories. Under our standard of review, if there is evidentiary support for either, we must affirm. *See Atlas Food Sys. & Servs., Inc.*, 99 F.3d at 599.

9

To show an express material breach, Virginia law requires evidence that the opposing party failed to perform an express obligation "that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Va. Elec. & Power Co. v. Bransen Energy, Inc.*, 850 F.3d 645, 655 (4th Cir. 2017) (quoting *Horton v. Horton*, 487 S.E.2d 200, 204 (Va. 1997)). The obligation on which the district court relied was Article 13, which, as set forth above, refers to appendices containing shipping rates. But no evidence suggests Norfolk Southern actually charged Drummond different rates than those promised under the Agreement. Rather, the evidence shows that during the relevant time periods, Drummond never shipped coal under the Agreement. Thus, our review of the record comports with Norfolk Southern's. We see no evidence from which a jury could reasonably conclude that Norfolk Southern expressly breached Article 13 of the Agreement.

We next consider whether there was sufficient evidence to support the jury's finding of breach based on the implied covenant of good faith and fair dealing. "Every contract imposes an obligation of good faith and fair dealing between the parties in its performance and its enforcement . . . ." 23 WILLISTON ON CONTRACTS § 63:22 (4th ed. 2021). This obligation means "neither party will do anything to injure or destroy the right of the other party to receive the benefits of the agreement. Violation of the duty of good faith and fair dealing constitutes a breach of contract." *Id*. (footnotes omitted). Moreover, this obligation contemplates that while "the duty of good faith does not prevent a party from exercising its explicit contractual *rights*, a party may not exercise contractual *discretion* in bad faith,

even when such discretion is vested solely in that party." *Va. Vermiculite, Ltd. v. W.R. Grace & Co.- Ct.*, 156 F.3d 535, 542 (4th Cir. 1998).

Importantly, however, this duty does not permit us to write into the Agreement obligations that do not exist. *See ACA Fin. Guar. Corp. v. City of Buena Vista, Va.,* 917 F.3d 206, 216 (4th Cir. 2019) ("[T]he implied covenant of good faith and fair dealing 'cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist.'" (quoting *Ward's Equip., Inc. v. New Holland N. Am., Inc.,* 493 S.E.2d 516, 520 (Va. 1997))). And it does not relieve a party of the economic consequences of the terms to which it agreed. Otherwise, this duty would undercut the principle that parties "are to be bound by the plain and unambiguous terms of their contracts." *Id*.

Here, Drummond introduced evidence at trial showing the benefit of the Agreement was obtaining known shipping rates so that it could offer utilities a one-stop-shop contract for coal. Drummond also introduced evidence that Norfolk Southern then entered into or amended confidential third-party contracts imposing millions of dollars in liquidated damages on utilities that elected to ship under the Agreement. Thus, Drummond argues the sum of this evidence indicates that Norfolk Southern sought to penalize utilities from shipping under the Agreement, thereby depriving Drummond of the benefit of its bargain with Norfolk Southern—shipping rates to create a viable one-stop-shop contract for utilities.

Responding to this evidence, Norfolk Southern protests that no reasonable jury could find for Drummond on the matter of breach because the Agreement expressly contemplated the continued existence and use of third-party contracts and, therefore,

11

Norfolk Southern was merely exercising its discretionary ability to continue contracting with utilities. We agree, as does Drummond, that the express terms of the Agreement permit Norfolk Southern to enter into third-party contracts. Response Brief of Appellee at 26 (stating Norfolk Southern's "contracts with the utilities, in isolation, are not a problem."). According to Drummond, however, the problem was the confidential nature of the contracts and the liquidated damages provisions they contained. Drummond's argument was that, based on those provisions, Norfolk Southern deprived Drummond of the benefit of its bargain. In effect, Drummond negotiated for and purchased something from Norfolk Southern that Norfolk Southern then turned around and rendered valueless. We agree that a reasonable jury could find that Norfolk Southern's conduct, not in entering into third-party utility contracts, but in imposing liquidated damages on utilities for shipping under the Agreement, amounted to a bad faith exercise of its contractual discretion. Therefore, this conduct supports a finding of a breach of the implied duty of good faith and fair dealing.[5]

Admittedly, this is not the only possible conclusion the jury could have reached. Norfolk Southern put forth competing evidence explaining that these contracts were typical. Moreover, there was evidence these contracts may have been "reasonable." J.A. 2260. But our standard requires a much higher showing—that no reasonable jury could find for Drummond. And that is simply not met here. There was sufficient evidence for a

---

[5] Because we affirm the district court based on the implied duty of good faith and fair dealing, we need not discuss the third theory of breach presented, prevention.

12

reasonable jury to find that Norfolk Southern breached the implied duty of good faith and fair dealing.

B.

Norfolk Southern, however, raises an additional argument. Even if there was sufficient evidence to support a finding of a breach, Norfolk Southern maintains there was no evidence that such breach caused any damages to Drummond. It claims Drummond was not damaged because Norfolk Southern's third-party contracts with utilities had no causal connection to Drummond not shipping under the Agreement. According to Norfolk Southern, Drummond did not ship under the Agreement because it made a business decision to pursue customers abroad where the market was more lucrative than in the United States.

But we need not decide the issue of whether or not there was evidence that Drummond suffered any damages caused by Norfolk Southern's breach of the Agreement because of the nature of the relief Drummond sought. In seeking declaratory relief, Drummond sought a statement of its rights and responsibilities based on its belief that Norfolk Southern breached the Agreement.[6] Drummond, in effect, sought a shield by

---

[6] A declaratory judgment is only "[a] binding adjudication that establishes the rights and other legal relations of the parties without providing for or ordering enforcement." JUDGMENT, Black's Law Dictionary (11th ed. 2019). The purpose of a declaratory judgment "is usually the prevention of a wrong, but . . . it commands nothing, and authorizes no administrative officer to take action under it." 11 CORBIN ON CONTRACTS § 55.2 (2020). Declaratory relief can be sought to resolve contract disputes in the following matters: validity of the contract, construction of disputed contract terms, the right to terminate the contract and the right to compel arbitration. *See* 12 MOORE'S FEDERAL PRACTICE - CIVIL § 57.80 (2021). Based on a declaratory judgment, a court may grant

13

which to protect itself should Norfolk Southern seek payment of the 2015 and 2016 shortfall fees. And in order for the district court to grant Drummond a shield, the jury was asked a series of factual questions: whether Norfolk Southern breached the Agreement, whether that breach was material and when the first breach occurred.

Importantly, Drummond did not seek a sword—it neither alleged a breach of contract claim nor sought declaratory relief on all the elements of such a claim. If it had, it would have been required to offer evidence on all the elements of an action for breach of contract, which are "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Va. Elec. & Power Co.,* 850 F.3d at 655 (quoting *Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d 296, 299 (2016)). While Norfolk Southern would have us analyze whether the jury properly found all elements met for a breach of contract claim, that is not the question the jury was asked because that is not the claim Drummond brought. Rather, the jury was only asked whether Norfolk Southern materially breached its agreement with Drummond and, if so, when. Thus, whether or not there was evidence of damages is beside the point. Accordingly, we find no error in the district court's order on this basis either.[7]

___

"[f]urther necessary or proper relief . . . after reasonable notice and hearing[] against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

[7] And this same reasoning renders Norfolk Southern's statute-of-limitations defense equally inapplicable. Here, if the shoe were on the other foot and Norfolk Southern had sued Drummond for breach of contract for failure to pay the 2015 and 2016 shortfall fees, Drummond's assertion of a first material breach defense would not be subject to a five-

14

III.

We next turn to Drummond's appeal. Drummond argues that the district court's denial of its Rule 59(e) Motion was error because it was inconsistent to conclude there was evidence supporting Norfolk Southern's material breach of the Agreement in 2010 but then refuse to award Drummond the amount of shortfall fees it paid from 2010 to 2014. "We review a district court's decision on a motion to alter or amend the judgment under Rule 59(e) for abuse of discretion." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.,* 148 F.3d 396, 402 (4th Cir. 1998).

But in addition to our abuse of discretion standard of review, Virginia law makes clear that courts are afforded wide latitude in granting or denying equitable relief. *Callison v. Glick*, 826 S.E.2d 310, 318 (Va. 2019) (finding that "awarding or denying equitable remedies in contract is within the sound discretion of the [trial] court"). "Equitable rescission is a remedy which calls for the highest and most drastic exercise of the power of a court of chancery—to annul and set at naught the solemn contracts of parties." *Young-Allen v. Bank of Am., N.A.*, 839 S.E.2d 897, 900 (Va. 2020) (internal quotation marks omitted). "Ordinarily, rescission will not be granted for breach of a contract which is not

year statute of limitations. Moreover, even if the statute of limitations did apply, Norfolk Southern waived it by failing to plead its existence as to any theory except restitution, which did not survive summary judgment, and by failing to so much as mention the defense again until the close of evidence after the jury was excused. *See Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 118 (4th Cir. 2021) ("As a general matter, the defense of limitations must be raised by an affirmative defense presented in the answer or an amendment to the answer or it will be forfeited. And the defense may be waived by conscious and deliberate conduct indicating the wish not to present the defense or by the conscious and deliberate failure to present the defense.") (cleaned up).

15

of such substantial character as to defeat the object of the parties in making the contract . . . ." *Neale v. Jones*, 349 S.E.2d 116, 119 (Va. 1986).

With that legal background in mind, we turn to the reasoning of the district court below. According to the district court, "[t]here are several reasons why it would be inequitable for Drummond to recoup the shortfall fees it paid during 2010–2014." J.A. 2547. First, even though Drummond bargained for the ability to ship coal, it never did so. Additionally, Drummond never gave notice to Norfolk Southern that it anticipated not being able to ship the guaranteed volume under the Agreement from 2010 to 2014 or worked together with Norfolk Southern to identify transport alternatives. Taken together, according to the district court, these findings suggest "Drummond made the business decision to sell the bulk of its Colombian coal overseas, and paid shortfall fees to Norfolk Southern under [the Agreement] to keep its option open to ship its coal to domestic southeast utilities should market conditions make it favorable to do so." J.A. 2548–49.

On top of that, the district court emphasized that Drummond released Norfolk Southern from any liability for certain utility contracts. To grant rescission would, in effect, nullify that bargained-for release. Moreover, the district court cited Norfolk Southern's partial performance in the form of infrastructure upgrades contemplated under the Agreement as cutting against rescission. In summary, the district court stated, "given Drummond's business decision to pay the shortfall fees and ship its coal to more lucrative overseas markets, Norfolk Southern's part performance . . . , and the parties' prior mutual release, rescission of the contract would be inequitable." J.A. 2553–54. As such, "the

16

drastic equitable remedy is not appropriate under the unique facts of this case." J.A. 2557–58.

Given our standard of review, the discretion afforded to courts under Virginia law in making decisions about equitable relief and the district court's expansive reasoning assessing equities unique to this case, we decline to find the district court abused its discretion in denying Drummond complete rescission.[8]

IV.

The district court properly denied Norfolk Southern's Rule 50(b) Motion and did not abuse its discretion in denying Drummond's Rule 59(e) Motion seeking complete rescission. For all the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

---

[8] In addition, it is not all clear that, based on the allegations of the complaint, the remedy of rescission is legally available. As noted above, only Drummond's theories for declaratory relief excusing Drummond's performance due to Norfolk Southern's breach of the Agreement and for rescission based on Norfolk Southern's breach survived summary judgment. But in seeking such relief, Drummond did not allege that it suffered harm or damages caused by Norfolk Southern's breach. In other words, Drummond sought both declaratory relief and rescission without alleging all the elements of a breach of contract claim. As described above, there was no problem with Drummond's allegations given the limited declaratory judgment it was seeking. But there appears to be a big problem with those allegations as they relate to rescission. The Virginia Supreme Court "has never held that equitable rescission is available in cases where a plaintiff fails to plead that he or she incurred any damages or suffered any harm caused by an alleged breach . . . . Rescission based upon a breach of contract is not a cause of action in itself, but rather a remedy." *See Young-Allen v. Bank of Am., N.A.*, 839 S.E.2d 897, 900 (Va. 2020). For the same reasons it did not have to prove all the elements of a breach of contract claim to obtain declaratory relief, Drummond cannot now support the remedy of rescission. But even if such relief were legally available, the district court did not abuse its discretion here in denying it.

17