[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12538

Non-Argument Calendar

_____

DATUM SOFTWARE, INC.,

                                                      Plaintiff-Appellant,

*versus*

CITIZANT, INC.,

                                                      Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:23-cv-00136-KFP

_____

Before WILSON, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

This case arises from a contract dispute between Citizant, Inc. and Datum Software, Inc.[1]  On appeal, Datum argues that the district court erred in (A) dismissing its breach of contract claim for failure to state a claim, (B) dismissing its fraud claim for failure to plead, and (C) denying its request to amend its complaint.  After careful review, we affirm.

## I.    Background

According to Datum's complaint, Datum and Citizant "entered into a Teaming Agreement . . . to submit proposals to the Department of Defense . . . to perform computer software services[.]"[2]  The Teaming Agreement designated Citizant as the prime contractor and Datum as the subcontractor.

---

[1] Citizant filed an unopposed motion to amend its response brief on appeal. The motion is GRANTED.  We considered the amended brief in deciding the case.

[2] Teaming agreements often provide that one party will assist another party intending to bid on a government contract.  *See Colsa Corp. v. Martin Marietta Servs., Inc.*, 133 F.3d 853, 854 (11th Cir. 1998) ("Martin Marietta and Colsa entered a 'Teaming Agreement,' which provided that Colsa would assist Martin Marietta to obtain the Contract and support Martin Marietta by providing software services under the Contract. This support was contingent, however, on Martin Marietta being awarded the Contract."); *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 666 (3d Cir. 1998) ("Typically, a teaming agreement is an arrangement whereby a subcontractor will 'team'

23-12538              Opinion of the Court                    3

The Teaming Agreement said that if the Department of Defense ("DOD") chose their proposal, Datum and Citizant would "undertake commercially reasonable efforts toward entering into subcontracts":

> 2.2 If, during the term of this Agreement, prime contracts or task orders resulting from the Solicitations are awarded to Citizant, the Parties will undertake commercially reasonable efforts towards entering into subcontracts for that portion of the work as set forth in Exhibit A of this Agreement, as may be modified by the Parties. . . .

Furthermore, the Teaming Agreement listed conditions to be met before Citizant offered those subcontracts to Datum:

> 3.2 If the Programs are awarded to Citizant, . . . then Citizant intends to offer to subcontract those items to [Datum], provided that the following conditions are met:
>> a.    [DOD]    consent    to    [Datum's] participation . . . ;
>> b.    Prime    Contract(s)    Limitation    on Subcontracting requirements are adhered to;
>> c. The Parties reach agreement with respect to all of [Datum's] responsibilities under the proposed subcontracts, including but not limited to price, schedule, and terms and conditions.

---

with a company intending to bid on a government contract as a prime contractor in order to pool financial and technical resources.").

4                         Opinion of the Court                    23-12538

And the Teaming Agreement explained that it would automatically expire in certain situations:

> 7.1 This Agreement shall automatically expire upon the happening of any one of the following events[:]
>
> . . .
>
>> f. The execution of a[n] Agreement between Citizant and [Datum] following award of the Prime Contract to Citizant;
>> g. Failure, following good faith negotiations, of Citizant and [Datum] to agree to the terms of a[n] Agreement within sixty (60) calendar days from the date of [Datum's] receipt of a draft Agreement post-award. . . .

Further, Exhibit A of the Teaming Agreement "outline[d] the anticipated scope of services[.]"  It gave Datum "a minimum of 60% of awarded labor costs" for a specific project—the AFLCMC/HIM Agile Maintenance Support (AMS) Subject Matter Expert (SME) Services II (hereinafter "AMSSME").  But it also said that the assigned tasks and responsibilities "may be modified, as necessary, to accurately reflect any amendments or changes to the final solicitation; and/or upon award of the Prime Contract."

The DOD accepted the proposal for AMSSME and awarded Citizant the contract.  The parties executed a Subcontract and Subcontract Task Order specifying the work Datum would perform.  The parties modified their agreement four times.

Datum alleges that although it performed at least 60% of the work share, and although Citizant reaffirmed its obligation to pay

23-12538                Opinion of the Court                5

that full amount, Citizant has only paid Datum for 49% of the work share.

Datum sued Citizant in the Circuit Court of Montgomery, Alabama, for breach of contract and fraud.[3]   In its complaint, Datum claimed (A) that Citizant breached the Teaming Agreement by failing to pay the full 60% owed, and (B) that Citizant fraudulently induced Datum to enter the Teaming Agreement based on the representation that it would pay its full obligation.[4]

Citizant removed the case to the U.S. District Court for the Middle District of Alabama, Northern Division, under diversity jurisdiction.  It attached the Teaming Agreement,[5] the Subcontract, the Subcontract Task Order, and the four modifications to the Subcontract Task Order[6] to the notice of removal.

---

[3] Datum also presented declaratory judgment as a claim.  But declaratory judgment is a form of relief, not a cause of action. *McKinnon v. Talladega Cnty*, 745 F.2d 1360, 1362 (11th Cir. 1984).

[4] Datum's complaint did not mention the Subcontract, Subcontract Task Order, or any modifications to the Subcontract Task Order.

[5] The Teaming Agreement may be considered without converting the motion to dismiss into a motion for summary judgment because the Teaming Agreement "is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

[6] While we acknowledge the Subcontract, Subcontract Task Order, and the four modifications, we need not (and do not) rely on them in our forthcoming analysis.

Citizant then moved to dismiss Datum's complaint, arguing that Datum insufficiently stated claims for breach of contract and fraud. Datum responded, contesting both points. Its response brief also requested to amend the complaint.

The district court granted Citizant's motion to dismiss. It first concluded that Datum failed to state a breach of contract claim because it could not "establish that a legally enforceable document existed in the first place." The district court found that, viewing the document as a whole, the Teaming Agreement was "an unenforceable agreement to agree" and "a framework for a future, more definite subcontract *if* Citizant were awarded the prime contract[.]" And it said that even if the Teaming Agreement *were* an enforceable contract, it expired once the DOD awarded the contract to Citizant.

Addressing the fraud claim, the court concluded that Datum failed to meet "[Federal Rule of Civil Procedure] 9(b)'s heightened pleading standard."

The district court also concluded that Datum improperly requested leave to amend via its response to Citizant's motion to dismiss. But it said that "even if Datum had properly sought leave," it "would deny the request because amendment would be futile."

The district court therefore dismissed the action with prejudice. Datum timely appealed.

## II.    Standard of Review

"We review the grant of a motion to dismiss under Rule 12(b)(6) *de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022). To survive a Rule 12(b)(6) motion to dismiss a complaint for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); Fed. R. Civ. P. 12(b)(6). Labels, conclusions, and formulaic recitations of the elements "will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"We review a district court's denial of leave to amend a complaint for an abuse of discretion." *Chabad Chayil, Inc.*, 48 F.4th at 1229.

## III.    Discussion

We first address whether Datum's complaint states a claim for breach of contract. We then evaluate whether Datum's complaint states a claim for fraud (*i.e.*, whether Datum pleaded its fraud claim with the heightened particularity required by Rule 9(b)). We conclude by determining whether the district court properly denied Datum's request to amend its complaint.

### A.  Whether Datum's complaint states a breach of contract claim

Datum argues that its complaint sufficiently stated a claim for breach of contract because "[t]he unambiguous language of the [Teaming] Agreement shows that there was unequivocal mutual assent of the contracting parties to terms reasonably certain under the circumstances[.]"  We agree with the district court that Datum failed to state a claim.

"Federal courts sitting in diversity apply the forum state's choice-of-law rules." *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998).  The forum state, Alabama, "first look[s] to the contract to determine whether the parties have specified a particular sovereign's law to govern." *Stovall v. Universal Const. Co.*, 893 So. 2d 1090, 1102 (Ala. 2004).  The Teaming Agreement has a choice-of-law provision that directs us to apply Virginia law.

Under Virginia law, a plaintiff must prove three elements for a breach of contract claim: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004).  Our analysis starts and stops with the first element—the Teaming Agreement does not create a legally enforceable obligation.

In Virginia, it is well-settled that "there must be mutual assent of the contracting parties to terms reasonably certain under

the circumstances in order to have an enforceable contract." *Allen v. Aetna Cas. & Sur. Co.*, 281 S.E.2d 818, 820 (1981). And "contractual provisions that 'merely set out agreements to negotiate future subcontracts' are unenforceable." *CGI Fed. Inc. v. FCi Fed., Inc.*, 814 S.E.2d 183, 188 (Va. 2018) (quoting *Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d 296, 300 (Va. 2016)).

The Supreme Court of Virginia has consistently held that teaming agreements, even those allocating a post-award work share, are not enforceable. *See id.* at 188–89 ("At most, the . . . teaming agreement imposed a framework for good faith negotiations of a final subcontract."); *Navar, Inc.*, 784 S.E.2d at 300 ("The rules of contract law do not apply to the Teaming Agreement because it is merely an agreement to agree to negotiate at a future date."); *W.J. Schafer Assocs., Inc. v. Cordant, Inc.*, 493 S.E.2d 512, 515 (1997) ("Clearly, therefore, the Teaming Agreement shows by its express terms that it was not an enforceable contract[.]").

For example, in *CGI Federal Inc. v. FCi Federal, Inc.*, the Virginia Supreme Court said that the provisions in the amended teaming agreement "[did] not create any enforceable post-award obligations[.]" 814 S.E.2d at 188. Although the amended teaming agreement detailed the post-award work share for the parties if their proposal resulted in a contract award, that work share was subject to a final contract between the parties. *Id.* at 186, 188. The teaming agreement required that, if the contract was granted, "the parties . . . enter 'good faith negotiations for a subcontract.'" *Id.* at

188–189.    It also "set forth multiple contingencies for any subcontract" and stated the contract would be terminated if the parties "failed 'to reach agreement on the terms and conditions of a subcontract'" within an allotted amount of time.  *Id.* at 189.  The Virginia Supreme Court concluded that these provisions showed that "the parties never agreed to the final terms of a subcontract" via the teaming agreement "and expressly conditioned the formation of a subcontract on future events and negotiations[.]"  *Id.*

This same analysis holds here.  The Teaming Agreement between Datum and Citizant contemplated a future, formal contract *if* the DOD selected their proposal.[7]  Section 2.2 of the Agreement said that if Citizant were granted the proposal, the parties would "undertake commercially reasonable efforts towards entering into subcontracts for that portion of the work . . . , as may be modified by the [p]arties."  Section 3.2 explained that if the contract were to be granted, Citizant "intend[ed] to offer to subcontract those items to [Datum], provided that [certain] conditions [were] met," including "reach[ing] agreement" on "price, schedule, and terms and conditions."  And Section 7.1(g) contemplated the possibility that the parties would not enter into a subcontract *even if* the DOD awarded Citizant the contract.

---

[7] *See Boisseau v. Fuller*, 30 S.E. 457, 457 (1898) ("[T]he circumstance that the parties dointend [sic.] a formal contract to be drawn up is strong evidence to show that they did not intend the previous negotiations to amount to an agreement.").

Under that section, if Datum and Citizant could not agree upon an arrangement within 60 calendar days of their proposal being selected, then the Teaming Agreement would automatically expire. Like the Virginia Supreme Court in *CGI Federal Inc.*, we read this language to mean that the Teaming Agreement served as "a framework for good faith negotiations of a final subcontract" rather than as a binding contract for performance. 814 S.E.2d. at 189.

Reading other provisions in the Teaming Agreement reinforces that the document guided the parties *in preparation* for their proposal to the DOD rather than serving as a final, binding subcontract. For example, the Teaming Agreement only identified Citizant's and Datum's responsibilities for the proposal and referenced the post-award work in an exhibit that, by its own terms, "outline[d] the *anticipated* scope of services" (emphasis added). And although that exhibit assigned Datum 60% of the work share, it also said that the assigned tasks and responsibilities "may be modified, as necessary, to accurately reflect any amendments or changes to the final solicitation; and/or upon award of the Prime Contract." From this holistic view, the district court properly concluded that the Teaming Agreement was an "unenforceable agreement" to negotiate future subcontracts.

Datum resists this conclusion by arguing that "all of the things an unenforceable Teaming Agreement lacks are present"—a specified "sum" for payment (60% of work share), assurance that Datum would be hired as a subcontractor, and "a clear and

reasonable basis for affording a remedy for the breach of th[e] agreement." But Virginia cases tell us that work share percentages do not specify "a sum, or any reasonably certain method for determining a sum" for payment. *See, e.g.*, *Navar, Inc.*, 784 S.E.2d at 300 (stating that "Plaintiffs did not present any evidence to support their argument" that the agreement contained a sum "beyond arguing that they were entitled to a full 49% workshare"). Further, as already discussed, the Teaming Agreement only showed an intention (not an assurance) to enter a contractor/subcontractor relationship because Section 7.1(g) considered the possibility that the parties would not enter into a subcontract even after the DOD awarded Citizant the contract. And because the Teaming Agreement was not enforceable, it cannot support a remedy for a breach of contract claim. Accordingly, Datum's arguments fall short of proving the existence of an enforceable contract.[8]

Based on the foregoing, Datum's breach of contract claim fails as a matter of law because the Teaming Agreement was not enforceable.

---

[8] On appeal, Datum also criticizes Citizant and the district court for focusing too much on the Teaming Agreement at the expense of the other subcontract documents. But Datum only pleaded breach of the Teaming Agreement. So, like the district court, we focus our analysis on that document.

### B. Whether Datum's complaint pleaded its fraud claim with heightened particularity

We next turn to whether Datum properly pleaded its fraud claim. Datum argues on appeal that Citizant committed fraud with two false representations: (1) "that Datum's work share would be at least 60% of awarded labor costs should Citizant be awarded the task order"—a representation found in Exhibit A of the Teaming Agreement, and (2) that Citizant would "make up" the 11% it owed Datum "on different projects on which it teamed with Datum"—a representation not mentioned in the Teaming Agreement. The district court concluded that Datum failed to meet "[Federal Rule of Civil Procedure] 9(b)'s heightened pleading standard" and dismissed the claim. We agree with the district court's conclusion.

The federal pleading standard applies to Datum's fraud claim because the case was removed to federal court. *See* Fed. R. Civ. P. 81(c)(1) (explaining the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court"); *Reynolds v. Behrman Cap. IV L.P.*, 988 F.3d 1314, 1323 (11th Cir. 2021) ("[T]he Supreme [C]ourt has consistently held that once a case has been removed from state court to federal court, federal law 'govern[s] the mode of procedure[.]'" (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 438 (1974)).

Under Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). Pleading a fraud claim

with particularity means "identifying the who, what, when, where, and how of the fraud alleged." *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022). Specifically, the complaint must show:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).

We first address Citizant's statement in the Teaming Agreement to pay Datum 60% of the work share.[9] Because the Teaming Agreement was unenforceable, we conclude that Datum failed to meet step three of the heightened pleading standard. In other words, Datum did not present statements sufficient to support a fraud claim, and the district court properly dismissed Datum's fraud claim concerning the division of awarded labor dollars.

We next evaluate whether Datum can meet all four heightened pleading requirements when it comes to Citizant's

---

[9] As best we can tell, Datum appears to be referring to the promise of 60% of the work share presented in the Teaming Agreement because Datum does not present a different instance in which the alleged false representation was made.

alleged promise to pay Datum the remaining 11% owed. Specifically, Datum's complaint does not show "the time and place" (or any further details) of such promise. *Id.* We therefore also agree with the district court's conclusion that Datum failed to allege fraud with the heightened specificity required by Rule 9(b) as it relates to the statement about the remaining 11% allegedly owed by Citizant.

### C. *Whether the district court erred in denying Datum's request for leave to amend*

We turn, last, to whether the district court erred in denying Datum's request for leave to amend the complaint. Datum argues that the district court should have allowed it to amend its complaint because "[i]t was . . . within the [d]istrict [c]ourt's power" to do so. Datum asserts that, at the time it requested to amend its complaint in a response brief, it did not view a motion for leave to amend as necessary because "there was still a chance that the Court would deny Citizant's Motion to Dismiss[.]" We conclude that the district court did not abuse its discretion in denying Datum's request for leave to amend the complaint because Datum's request to amend was improper.[10] *See Chabad Chayil, Inc.*, 48 F.4th at 1229 (setting forth the abuse of discretion standard).

---

[10] The district court also denied Datum's request to amend because it found that amendment would be futile. *See In re Engle Cases*, 767 F.3d 1082, 1109 (11th Cir. 2014) (explaining that a motion for leave to amend may be denied "where amendment would be futile"). Datum challenges this conclusion on appeal.

Federal Rule of Civil Procedure 7(b) provides that "[a] request for a court order" must be via written motion that "state[s] with particularity the grounds for seeking the order" and "state[s] the relief sought." Fed. R. Civ. P. 7(b). In applying Rule 7(b), we have said that "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Chabad Chayil, Inc.*, 48 F.4th at 1236 (quotations omitted). Because Datum did not move for leave to amend, but rather embedded its request in its response to Citizant's motion to dismiss, "[t]he district court was well within its discretion to deny [Datum's] perfunctory request to further amend its complaint." *Id.*

Furthermore, Datum's request is improper because Datum failed to attach a copy of the amended complaint or include any indication of the substance of its proposed amendment. *See Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, 93 F.4th 1315, 1336 (11th Cir. 2024) (stating that a proper motion for leave to amend must "either set forth the substance of the proposed amendment or attach a copy of the proposed amendment" (quotations omitted)). For this additional reason, the district court did not abuse its discretion.

Datum fights this conclusion by arguing that it did not move for leave to amend because "it did not think such an action necessary, as there was still a chance that the Court would deny

---

We need not also analyze whether amendment would be futile because we agree with the district court's decision to deny Datum's request as improper.

Citizant's Motion to Dismiss[.]"  It asserts that "[i]t was entirely within the District Court's power, regardless of whether Datum had formally requested leave to amend, to draft and enter a[n] opinion . . . allow[ing] Datum an opportunity to amend its Complaint."  We have rejected these arguments already, explaining that a plaintiff may no longer "await[] the district court's determination with respect to a Rule 12(b)(6) motion to dismiss" before properly requesting leave to amend.  *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc).  Indeed, "[a] district court is not required to grant a plaintiff leave to amend [its] complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend" nor properly "requested leave to amend before the district court."  *Id.*  Datum's arguments therefore fail.[11]

Because Datum did not properly move for leave to amend, we discern no abuse of discretion.  We agree with the district court's decision to deny Datum's request.

### IV.    Conclusion

For the above reasons, we affirm the district court's decision.

---

[11] We note that Datum could also have amended its complaint under Federal Rule of Civil Procedure 15(a), which provides that "[a] party may amend its pleading once as a matter of course . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1)(B).  But the record shows that Datum did not pursue this course.

**AFFIRMED.**