PER CURIAM.
This is an appeal from a final judgment entered in favor of a bailor against a bailee. We reverse.
The trial court’s undisputed findings of fact state:
1. A service contract was made between WELLS FARGO ARMORED SERVICE CORPORATION (“WELLS FARGO”) and GULF OIL CORPORATION on January 22, 1979. The service *861 contract provided that WELLS FARGO would call for and receive from GULF OIL CORPORATION or its designated agent, funds and other valuable articles. The service contract specified the locations where calls would be made.
2. The plaintiff, FOOD KWIK, INC., was a designated agent of GULF OIL CORPORATION, and operated a gas station owned by GULF OIL CORPORATION in Riviera Beach, Florida, which was one of the locations designated on the service contract between WELLS FARGO and GULF OIL CORPORATION.
3. Pursuant to the service contract, FOOD KWIK had been given a Receipt Book and a Signature List, as well as instructions as to the use of both. FOOD KWIK passed these instructions on to its employees, including Ms. Bell.
4. The instructions given to FOOD KWIK and its employees regarding the use of the Receipt Book and Signature List were that money and other articles of value were not to be delivered to a WELLS FARGO messenger unless the Receipt Book had been signed by that messenger and his signature, as written in the Receipt Book, had been compared with his actual signature as it is written on the Signature List. In addition, FOOD KWIK and its employees were instructed that if the messenger failed to sign or his signature was different than it appeared on the Signature List, that they were to immediately notify WELLS FARGO.
5. On March 3,1979, Dale Darville, an authorized messenger of WELLS FARGO whose signature appears on the Signature List, arrived at the gas station operated by FOOD KWIK in the course of his employment. He arrived in a WELLS FARGO truck, was wearing a WELLS FARGO uniform, and was carrying a clip board with “Shipment to Vault” manifest sheets attached.
6. Messenger Darville entered the FOOD KWIK location and approached Ms. Bell who was seated at a desk with her back to him. While remaining seated, Ms. Bell turned around and handed messenger Darville the Receipt Book. She then turned back to the desk to continue her work. Before she had completely turned back to work, Ms. Bell saw messenger Darville take the Receipt Book, put it on his clip board with the “Shipment to Vault” manifest sheets attached, and appear to begin signing the Receipt Book.
7. After a few moments, Ms. Bell turned around again and messenger Dar-ville closed the Receipt Book and handed it back to her. Thereupon messenger Darville picked up the envelope of money and credit card receipts that Ms. Bell had prepared, and he immediately left the FOOD KWIK location.
8. While messenger Darville was with Ms. Bell, he filled in the “Shipment to Vault” manifest, and indicated that he had made no pick up at that location. He purposely did not sign the Receipt Book and the book remains unsigned for the date March 3, 1979.
9. When Ms. Bell was given the Receipt Book back, she did not look at it to see if the messenger had signed it and she did not look at the Signature List in order to compare the signatures. Much later that day, however, Ms. Bell did discover that the Receipt Book had not been signed. Because she knew she had failed to follow her instructions, she never told her employer of the mistake, but hoped the messenger would properly deliver the money and no problem would arise.
10. The money was stolen by messenger Darville, and it was not until approximately March 10, 1979, that FOOD KWIK realized the money was missing.
11. The envelope that messenger Dar-ville stole contained $4,068.35 in cash and $1,017.05 in credit card receipts.
Based on the foregoing facts the trial court made the following conclusions:
1. Both jurisdiction over the subject matter and over the parties is proper.
2. The service contract between WELLS FARGO and GULF OIL COR *862 PORATION, providing that the responsibility and liability of WELLS FARGO for the loss of any items of value will not begin until the Receipt Book is signed by an authorized representative of WELLS FARGO and the items are delivered into the possession of that representative is valid. The parties to a bailment may by express contract enlarge, abridge, qualify or supercede the obligations which would otherwise arise from a bailment by implication of law, and the service contract therefore supercedes the obligations which would otherwise exist under a traditional bailment by implication of law.
3. Theft, per se, is outside the scope of employment and messenger Darville was not hired to steal. The whole concept of WELLS FARGO and the procedure surrounding the service contract and the use of the Receipt Book and the Signature List is to prevent thievery.
4. Ms. Bell was negligent in not following her instructions and in failing to inspect the Receipt Book to see that it was signed by messenger Darville.
5. While recognizing that the parties, through the service contract, did provide that a bailment and liability would not come into existence until the Receipt Book was signed, the Court concludes that in this instance where messenger Darville came into the FOOD KWIK location clothed with a uniform, hat and gun of WELLS FARGO, and arrived in a WELLS FARGO truck, and where messenger Darville did deliberately deceive Ms. Bell into thinking that he was signing the Receipt Book and did purposefully set out to conceal the fact from Ms. Bell that he had not signed the Receipt Book so that he could steal the money, then the service contract should not bar a recovery in this instance by FOOD KWIK against WELLS FARGO.
6. The provisions of the service contract setting forth when the responsibility and liability of the parties commences and ends does not violate any public policy of this state and is not an exclusionary clause.
7.The service contract provides that the liability per shipment shall not exceed the sum of $4,000.00. Therefore, the liability of WELLS FARGO for the loss shall not exceed the sum of $4,000.00.
We disagree with the trial court’s conclusion in paragraph 5, supra, that the parties’ contract should not bar recovery against appellant. In 5 Fla.Jur.2d, Bailments, § 7 the text recites:
While in the absence of a special agreement the degree of responsibility imposed on the parties to a bailment is fixed by law, the parties may make their own contracts in reference to their mutual right and liabilities under bailments of property. Thus, they may by express contract enlarge, abridge, qualify, or supersede the obligations which would otherwise arise from the bailment by implication of law, so long as the contract does not violate the law or contravene public policy, and so long as it is actually a part of the contract of bailment and is expressed in clear and unmistakable language. The right of the parties to freely define their rights and obligations under the bailment by special contract is subject to the limitation that they are not permitted to contract in contravention of positive law or of public policy.
Section 5 of the parties’ contract provided in part:
(a) Subject to the limitations on the liability of Wells Fargo set out herein, Wells Fargo shall be liable for the loss of funds, securities, instruments and/or valuable articles delivered into its possession and receipted for by it hereunder only if Wells Fargo shall fail to deliver the securely and distinctively sealed package(s) or containeres) in which the same are contained or said to be contained to the designated consignee thereof, or its duly authorized agent, in the same or like condition as when delivered to and receipted for by Wells Fargo.... (Emphasis added).
(b) The responsibility of Wells Fargo as described in Section 5(a) hereof, for the safekeeping of such funds, securities, ip- *863 struments and/or valuable articles shall commence when the same have been received by Wells Fargo and a receipt issued therefor, and shall terminate when delivery, as defined in section 5(a) hereof, has been completed.
The contract plainly did not violate the law or contravene public policy. Its language was clear and unambiguous. Appellee’s liability would arise only when received by appellant and a receipt issued therefor. Because no receipt was issued here there could be no liability.
Accordingly, we reverse and remand for entry of judgment for appellant. Appel-lee’s cross-appeal is now moot.
REVERSED AND REMANDED.
DOWNEY, BERANEK and GLICK-STEIN, JJ., concur.