[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-14597

_____

OMNIPOL, A.S.,
a Private Limited Company,
ELMEX PRAHA, A.S.,
a Private Limited Company,

                                                 Plaintiffs-Appellant,

*versus*

MULTINATIONAL DEFENSE SERVICES, LLC,
a Florida Registered Limited Liability Company, et al.,

                                                          Defendant,

CHRISTOPHER WORRELL,
an individual,

JAMES BRECH,
an individual,
BRYAN SIEDEL,
an individual,
AMY STROTHER,
an individual,
KIRK BRISTOL,
an individual,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-00794-VMC-TGW

_____

Before JORDAN, NEWSOM, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

This case arises out of a contract between Purple Shovel, LLC, and two Czech companies, Omnipol and Elmex Praha ("Elmex"), for the manufacture and delivery of 7,500 AK-47 assault rifles. In June of 2017, the U.S. Special Operations Command ("SOCOM") entered into a contract (the "SOCOM contract") with Purple Shovel to deliver the rifles for a price of $2,984,250. Purple

Shovel in turn contracted with Elmex to execute the delivery, and Elmex contracted with Omnipol to be the supplier.  Together, the parties entered into a "Cooperation Agreement" on June 26, 2017.  Non-party Benjamin Worrell signed on behalf of Purple Shovel.

The rifles were delivered to SOCOM on July 20, 2017.  Yet although SOCOM paid Purple Shovel the $2,984,250 due under the contract, Purple Shovel never paid Elmex.  Elmex, in turn, failed to pay Omnipol. Instead, on June 1, 2018, Purple Shovel petitioned the Bankruptcy Court of the Middle District of Florida for Chapter 11 relief.  Complaint, In re Purple Shovel, LLC, Case No. 8:18-bk-04599 (Bankr. M.D. Fla. June 1, 2018).  On September 24, 2018, Omnipol filed a proof of claim in the sum of $2,865,000, while Elmex filed a proof of claim in the sum of $300,000.

Close to a year later, on April 3, 2019, Omnipol and Elmex brought this action against several individuals allegedly involved in the formation of the two contracts: Amy Strother, Bryan Siedel, and Kirk Bristol, civilian employees of SOCOM, and Christopher Worrell and James Brech, two executive officers of Purple Shovel.[1]  Their complaint asserted six claims against the defendants: common law fraud, civil theft, unjust enrichment, a violation of Florida's Racketeer Influenced and Corrupt Organizations Act ("FL

---

[1] Omnipol and Elmex also included as defendants Angelo Saitta, Lisa Saitta, Robert Para, and Multinational Defense Services, LLC.  These defendants were dropped from the subsequent amended complaint.

RICO"), and two violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").[2]

The complaint alleged that the defendants had engaged in two fraudulent schemes. First, the complaint alleged that the defendants had conspired to defraud the government by tricking SOCOM into accepting defective arms, ammunition, and supplies. Second, the complaint alleged that the defendants induced Omnipol and Elmex into contracting with Purple Shovel to supply and deliver the 7,500 assault rifles, all the while intending to divert the SOCOM payment into their own coffers and leave Omnipol and Elmex unpaid.[3]

The District Court dismissed the complaint for failure to comply with Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure after finding that the allegations in the complaint were "speculative and conclusory," as well as "lack[ing] sufficient detail." Omnipol and Elmex thereafter filed an amended complaint on July 26, 2019. The amended complaint, however, made essentially the same allegations as the original complaint and did not add any meaningful facts in support.

---

[2] Omnipol and Elmex also included a request for attorneys' fees styled as its own count.

[3] We note in passing that despite the fact that Omnipol and Elmex believe the individual defendants effectively stole money belonging to Purple Shovel, they did not ask Purple Shovel's trustee in bankruptcy to recover the stolen funds. A recovery would have become an asset of the bankruptcy estate available to pay general creditors like Omnipol and Elmex.

19-14597                Opinion of the Court                5

The United States subsequently filed a notice of substitution for Strother, Siedel, and Bristol under the Westfall Act as to the state law claims of fraud, unjust enrichment, and civil theft, certifying that each defendant had been operating within the scope of their employment at the time of the incident giving rise to the claims.[4] The United States then filed a motion to dismiss the entire complaint. The United States argued, first, that the Federal Tort Claims Act ("FTCA") exempts from its waiver of sovereign immunity claims against the United States based on fraud. 28 U.S.C. § 1346(b), §§ 2401, 2402, 2671–2680. The state law claims, the United States asserted, all arose from the defendants' allegedly fraudulent promise to pay Omnipol and Elmex for the rifles on receipt of payment from SOCOM. Because these claims were therefore barred by sovereign immunity, the United States argued that the Court should dismiss the claims for lack of subject matter jurisdiction. The United States also argued that the amended complaint, in its entirety, failed to comply with the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Purple Shovel executives Brech and Worrell also filed motions to dismiss, arguing, among other things,[5] that the complaint failed to meet the pleading requirements of Rules 12(b)(6) and 9(b).

---

[4] This left only the state and federal RICO claims as to the federal defendants.

[5] Worrell also argued that Omnipol and Elmex were improperly targeting Purple Shovel executives in their personal capacity after having "made a bad business deal" with Purple Shovel. Brech made a similar argument in his own motion to dismiss.

After careful review, the District Court dismissed the amended complaint on all counts and with respect to all defendants. The District Court first found that because Strother, Siedel, and Bristol had been operating within the scope of their employment according to Florida law, the United States' substitution under the Westfall Act was proper.[6]  28 U.S.C. § 2679.   The Court then concluded that, because the "gravamen" of the complaint was one of fraud, misrepresentation, and deceit, the state law claims were barred under the sovereign immunity exception of the FTCA.[7]  As such, the Court was "without subject-matter jurisdiction against the United States, as the substituted defendant for the Federal Defendants"[8] as to those counts.

---

[6] The District Court rejected Omnipol and Elmex's argument that they should be provided an opportunity to conduct limited discovery on the scope-of-employment issue. Omnipol and Elmex, the District Court found, had failed to "proffer[] a forecast of specific facts that discovery would show but, rather, only [gave] examples of broad topics they would like to explore in discovery." Such an offering was insufficient, the District Court found, given the "purposes of the Westfall Act" and the "need to adequately protect federal employees from burdensome discovery.

[7] While the FTCA waives sovereign immunity for many state tort law claims, it does not do so for all of them.  The pertinent exception here is found in 28 U.S.C. § 2680(h), which states that "[a]ny claim arising out of . . . misrepresentation [or] deceit" is exempted from the FTCA's general waiver of sovereign immunity.  28 U.S.C. § 2680(h).

[8] The District Court also found that Omnipol and Elmex had failed to exhaust all of their administrative remedies under the FTCA.

19-14597          Opinion of the Court          7

The Court then found that the amended complaint, in its entirety, failed to state a claim of fraud against any defendant, failed to state a claim of civil theft against any defendant, failed to state a claim for unjust enrichment against any defendant, and failed to state a claim under either the state or federal RICO statutes.[9]  The Court therefore dismissed the amended complaint without leave to amend.

## I.

We review *de novo* a district court's dismissal for failure to state a claim, accepting all alleged facts as true and construing them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

## II.

On appeal, Omnipol and Elmex first challenge the District Court's substitution of the United States as a party in the place of Strother, Siedel, and Bristol as to the state law claims.  Consequently, they also challenge the District Court's finding that it lacked subject matter jurisdiction to consider the state law claims

---

[9] The District Court also dismissed the "count" for attorneys' fees, noting that attorneys' fees are a remedy and not a separate stand-alone claim.  Although Omnipol and Elmex ask this court to reverse the District Court's order in its entirety, they make no argument regarding attorneys' fees. Omnipol and Elmex have therefore waived any arguments on this issue.  *See Fed. Sav. & Loan Ins. Corp. v. Haralson*, 813 F.2d 370, 373–74 n.3 (11th Cir. 1987) ("[I]ssues that clearly are not designated in the appellant's brief normally are deemed abandoned.") (citing *Rogero v. Noone*, 704 F.2d 518, 520 n.1 (11th Cir. 1983)).

due to the bar of sovereign immunity.  We consider each issue in turn.

## A.

"The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229, 127 S. Ct. 881, 887 (2007) (citing 28 U.S.C. § 2679(b)(1)).  The Act empowers the Attorney General to respond to a suit against a federal employee by certifying that an employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." § 2679(d)(1), (2).  Upon such certification, the employee is dismissed from the action and the United States is substituted in her stead.

The Attorney General's Westfall certification, however, is subject to judicial review. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420, 115 S. Ct. 2227, 2229 (1995).  If a plaintiff challenges the Attorney General's certification, the District Court must apply *de novo* review to the Attorney General's scope of employment certification. *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1543 (11th Cir. 1990).  Yet because the Attorney General's certification serves as *prima facie* evidence that the conduct at issue occurred within the scope of employment, the "burden of altering the status quo by proving that the employee acted outside the scope of employment is . . . on the plaintiff." *Id.* at 1543.  The question of

whether an employee acted within the scope of her employment for purposes of § 2679(d)(1) "is an issue governed by the law of the state where the incident occurred." *Id.* at 1542 (citing *Nasuti v. Scannell*, 906 F.2d 802, 813 (1st Cir. 1990), *abrogated on other grounds by Osborn*, 549 U.S. 225, 127 S. Ct. 881.

Here, the District Court reviewed the United States Attorney's certification under the proper *de novo* standard of review. Accepting the allegations in Omnipol and Elmex's amended complaint as true, the District Court turned to Florida law to determine whether Omnipol and Elmex had proven that Strother, Siedel, and Bristol had acted outside the scope of their employment. Under Florida law, the conduct of an employee is considered within the scope of employment when it (1) is of the kind the employee is hired to perform, (2) occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) is activated at least in part by a purpose to serve the master. *Sussman v. Fla. E. Coast Props., Inc.*, 557 So. 2d 74, 75–76 (Fla. 3d Dist. Ct. App. 1990).

According to Omnipol and Elmex's amended complaint, Strother, Siedel, and Bristol were all civilian contracting officers at SOCOM "charged with issuing and overseeing prime contracts for the purchase and delivery of arms, ammunition, and related goods." The three employees, the complaint further alleged, engaged in a scheme to defraud Omnipol and Elmex "while acting as[] civilian contracting officer[s] for SOCOM" when they "issued a partial SOCOM contract with Purple Shovel" for the purchase of

the AK-47 assault rifles.  In other words, the complaint alleged that Strother, Siedel, and Bristol had engaged in "precisely the sort of act" they were hired to perform.  Even accepting the complaint's allegations as true, then, it is clear that Strother, Siedel, and Bristol were acting, at least in part, to serve SOCOM.  As such, they were operating within the scope of their employment according to Florida law.

The District Court was therefore entirely correct in concluding both that no additional discovery was needed on the scope-of-employment issue and that the United States had been properly substituted as Defendant for Siedel, Strother, and Bristol.

**B.**

It is well established that the United States is immune from suit unless it consents to be sued. *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1188 (11th Cir. 2011) (citing *United States v. Dalm*, 494 U.S. 596, 608, 110 S. Ct. 1361, 1368 (1990)).  By enacting the FTCA, the federal government waived its immunity from tort suits on many, but not all, state law tort claims.  *See Millbrook v. United States*, 569 U.S. 50, 52, 133 S. Ct. 1441, 1443 (2013) (citing *Levin v. United States*, 568 U.S. 503, 506, 133, S. Ct. 1224, 1228 (2013)).  One important exception to the FTCA's general waiver of sovereign immunity is the "misrepresentation exception," which is set out in 28 U.S.C. § 2680(h). Under § 2680(h), any claim arising out of misrepresentation or deceit does not benefit from a waiver of sovereign immunity.

According to the Supreme Court, "the essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies." *Block v. Neal*, 460 U.S. 289, 296, 103 S. Ct. 1089, 1093 (1983). Furthermore, it is "the substance of the claim and not the language used in stating it which controls." *Gaudet v. United States*, 517 F.2d 1034, 1035 (5th Cir. 1975). A plaintiff cannot, therefore, "circumvent the misrepresentation exception simply through artful pleading of its claims." *JBP Acquisitions, LP v. United States ex rel. FDIC*, 224 F.3d 1260, 1264 (11th Cir. 2000).

In examining Omnipol and Elmex's complaint, the District Court concluded that all of the state law claims arose out of the alleged fraudulent scheme outlined therein. It was right to do so. Counts I through III are composed of state law claims for fraud, civil theft, and unjust enrichment, each of which, when stripped to their essentials, is based on the defendants' allegedly fraudulent promise to Omnipol and Elmex to pay for the rifles on receipt of payment from SOCOM. Each claim therefore fits neatly into the misrepresentation exception of the FTCA and therefore also runs headlong into the bar of sovereign immunity. The District Court did not err in dismissing these claims for lack of subject matter jurisdiction.

### III.

Omnipol and Elmex also challenge the District Court's dismissal of their state law claims against Worrell and Brech, the two Purple Shovel executives, under Rule 9(b). To survive a motion to

dismiss, claims of fraud must satisfy the requirements of Rule 9(b). Under Rule 9(b), claims of fraud must be plead with particularity, which means identifying the who, what, when, where, and how of the fraud alleged. *Mizzaro v. Home Depot, Inc.* 544 F.3d 1230, 1237 (11th Cir. 2008). As our Court has noted previously, this rule serves an important purpose, both in "alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'"[10] *Ziemba v. Cascade Int'l., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988)). We consider each of the claims against Worrell and Brech in turn.[11]

## A.

We turn first to the fraud claim. Under Florida law, the elements of fraud are "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) the consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). On its face, Omnipol and Elmex's complaint fails to allege sufficient

---

[10] This latter point appears particularly apt in this case, since Omnipol and Elmex repeatedly link the alleged fraud in this case to the tragic deaths of retired U.S. veterans.

[11] Because Omnipol and Elmex's claims of civil theft and unjust enrichment "sound in fraud," they are subject to Rule 9(b)'s requirements. *See Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127 (11th Cir. 2019).

facts necessary to support a claim of fraud under Rule 9(b). As the District Court noted, the amended complaint contains only one statement made by Worrell to Omnipol and Elmex—a statement by Worrell that Purple Shovel would pay a portion of the contract price prior to delivery and acceptance of the weapons—but this statement (1) is contained in a RICO claim, not the fraud claim and (2) even if it had been properly alleged in the fraud claim, it would still be insufficient because the complaint does not allege that Worrell knew the statement was false when he made it *nor* does the complaint allege that the plaintiffs relied on this statement. Finally, the complaint does not allege a single specific statement made by Brech at all. The District Court was therefore correct to dismiss the fraud claim for failure to comply with Rule 9(b).

## B.

Under Florida law, a plaintiff stating a claim for civil theft must allege the defendant (1) knowingly (2) obtained or used, or endeavored to obtain or use, the plaintiff's property with (3) "felonious intent" (4) either temporarily or permanently to (a) deprive the plaintiff of the right or benefit of the property, or (b) appropriate the property to the defendant's own use or the use of another. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009). Again, just as with the fraud claim, the amended complaint fails to state a claim under Rule 9(b). Indeed, the civil theft claim fails under Rule 12(b)(6) as well. This is because the complaint fails to identify any specific funds (property) received by Worrell or Brech

that belonged to Omnipol and Elmex.[12]    Instead, the complaint essentially alleges that some portion of the funds in Purple Shovel's accounts were transferred to "unidentified co-conspirators at an unknown time in an unknown way, and that those unnamed co-conspirators then, at an unknown time and in an unknown way, transferred the funds" to Worrell, Brech, and the federal defendants.  This simply cannot support a claim for civil theft under either Rule 9(b) or Rule 12(b)(6).

## C.

Under Florida law, a plaintiff stating a claim for unjust enrichment must allege (1) the plaintiff has conferred a benefit on the defendant, (2) the defendant voluntarily accepted and retained that benefit, and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012).

Once again Omnipol and Elmex's amended complaint fails under Rule 9(b).  There is simply insufficient detail in the complaint to support a claim for unjust enrichment grounded in fraud.  As the District Court noted, the amended complaint is silent as to when SOCOM transferred the relevant funds to Purple Shovel, when

---

[12] That is, although the Cooperation Agreement indicated that Purple Shovel would be obligated to pay Omnipol and Elmex following SOCOM's payment to Purple Shovel, this did not make the SOCOM payment itself Omnipol and Elmex's property a priori.

Purple Shovel transferred the funds to unnamed co-conspirators, and when the co-conspirators transferred the funds to the defendants. Without these "key details," the complaint is unable to make out a claim for unjust enrichment that accords with Rule 9(b)'s heightened pleading standard. *See Mizzaro,* 544 F.3d at 1237 (noting that Rule 9(b) requires a plaintiff to plead the "who, what, *when*, where, and how" of the allegedly fraudulent behavior (emphasis added)). The District Court properly dismissed this claim for a failure to meet Rule 9(b)'s pleading requirements.

## IV.

Finally, Omnipol and Elmex challenge the District Court's dismissal of their state (Fla. Stat. § 772.101) and federal (18 U.S.C. § 1962(c), (d)) RICO claims. The first two claims allege substantive RICO violations; the third, a RICO conspiracy.

## A.

We have previously explained that interpretation of Florida's RICO law "is informed by case law interpreting the federal RICO statute" on which it is patterned. *Jones v. Childers,* 18 F.3d 899, 910 (11th Cir. 1994) (internal citations omitted). Thus, the analysis of both the federal and state RICO claims is the same. To make out a RICO claim, the plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Williams v. Mohawk Indus., Inc.,* 465 F.3d 1277, 1282 (11th Cir. 2006), *abrogated on other grounds as recognized in Simpson v. Sanderson Farms, Inc.,* 744 F.3d 702, 714–15 (11th Cir. 2014).

The District Court dismissed Omnipol and Elmex's racketeering claims after finding that the complaint failed to allege both the existence of an enterprise and the existence of a pattern of racketeering activity.  Because failure to properly allege either element warrants the complaint's dismissal, if we agree with the District Court's conclusion as to the enterprise element, we need not go into the various predicate acts alleged in the complaint.  And for the reasons below, we conclude the amended complaint failed to properly allege the existence of an enterprise.

An enterprise includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  Here, Omnipol and Elmex have alleged an associated-in-fact enterprise, which is defined as "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583, 101 S. Ct. 2524, 2528 (1981). To plead an associated-in-fact enterprise, a plaintiff must allege that a group of persons shares three structural features: "(1) a 'purpose,' (2) 'relationships among those associated with the enterprise,' and (3) 'longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067 (11th Cir. 2017) (quoting *Boyle v. United States*, 556 U.S. 938, 944, 946, 129 S. Ct. 2237, 2243–44 (2009)).

The amended complaint fails to adequately plead "relationships among those associated with the enterprise."  As the District Court aptly noted, beyond stating that Worrell and Brech are

Purple Shovel executives and Siedel, Strothers, and Bristol worked for SOCOM, the amended complaint merely alleges that the various defendants "knew each other" and "associated with each other in public and private" at some point in time prior to the formation of Purple Shovel. Although "proving sufficient relationships for an associated-in-fact enterprise is not a particularly demanding task," *id.* at 1068, it certainly requires more than suggesting that at some unknown point in past the defendants "knew" and "associated" with each other. Such allegations certainly do not plausibly suggest that this group of five individuals acted as a "continuing unit." *Turkette*, 542 U.S. at 583, 101 S. Ct. at 2528. As such, the amended complaint fails to state a claim for either state or federal RICO violations.

**B.**

Section 1962(d) of the RICO statutes makes it illegal for anyone to conspire to violate one of the substantive provisions of RICO, including § 1962(c). 18 U.S.C. § 1962(d). Direct evidence of a RICO conspiracy is not required; "the existence of conspiracy 'may be inferred from the conduct of the participants.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (citing *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997)). A complaint must, however, offer more than "mere[] legal conclusions." 605 F.3d at 1293.

Here, the allegations in the amended complaint do not support an inference of an agreement to violate the substantive provisions of RICO. The complaint simply alleges that the defendants

"intentionally conspired" and "agreed to the commission of [the racketeering acts] to further the scheme" outlined in the complaint. This is the kind of "formulaic recitations" of a conspiracy claim that the Supreme Court declared insufficient in *Twombly* and *Iqbal*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 1964–65 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50 (2009). Accordingly, we conclude that the District Court did not err in dismissing the RICO conspiracy claim in the amended complaint.

## V.

For the foregoing reasons, we affirm the District Court's dismissal of Omnipol and Elmex's amended complaint.

**AFFIRMED.**

JORDAN, Circuit Judge, concurring:

I join Judge Tjoflat's opinion for the court, but believe some additional discussion is warranted with respect to Omnipol's request for discovery on the government's certification under the Westfall Act, 28 U.S.C. § 2679.

We have not addressed the standard for assessing when a plaintiff is entitled to limited discovery to challenge such a certification, and our sister circuits have arguably taken different approaches. *Compare Gutierrez de Martinez v. D.E.A.*, 111 F.3d 1148, 1153 (4th Cir. 1997) (the plaintiff must "prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment"), *with Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003) (the plaintiff need only plead facts that, taken as true, would establish that the defendants' actions exceeded the scope of their employment), *and Melo v. Hafer*, 13 F.3d 736, 747 (3d Cir. 1994) (same). Omnipol urges us to adopt the standard used by the D.C. and Third Circuits, but we do not need to choose one approach over the other today. Even under the standard proposed by Omnipol, the district court correctly denied the request for discovery.

As today's opinion explains, under Florida law a person acts within the scope of his employment if he is engaged in the sort of conduct he was hired to perform, the conduct occurred within the time and space limits of the employment, and the conduct was motivated at least in part by a purpose to serve the employer. *See, e.g., Gowan v. Bay County*, 744 So. 2d 1136, 1138 (Fla.

2                    JORDAN, J., Concurring                    20-10709

1st DCA 1999).  Omnipol cites a Florida case for the proposition that "[t]heft, per se, is outside the scope of employment" because an employee is not "hired to steal," *Wells Fargo Armored Serv. Corp. v. Food Kwik, Inc.*, 400 So. 2d 860, 862 (Fla. 4th DCA 1981), but the quoted language in that case is from the trial court's conclusions of law and the Fourth District did not address that particular conclusion in its opinion.

In any event, Florida law does not broadly hold that intentional torts are *always* outside the scope of employment.  *See, e.g., City of Miami v. Simpson*, 172 So. 2d 435, 436–38 (Fla. 1965) (holding that a municipality can be held liable for the intentional torts of its employees committed within the scope of their employment); *Goodman v. Rose Realty West, Inc.*, 193 So. 3d 86, 88 (Fla. 4th DCA 2016) ("We reject the . . . argument that the seller/agent was acting outside the scope of his agency *because* he was engaged in fraudulent conduct."); *Trabulsy v. Publix Super Mkt., Inc.*, 138 So. 3d 553, 555 (Fla. 5th DCA 2014) (involving an alleged battery: "[O]nly when the employee steps aside from his employment to accomplish some purpose of his own, is the act not within the scope of employment.") (citation omitted and alterations adopted).  The Restatement (Second) of Agency, which Florida courts have cited to, *see, e.g., Perez v. Zazo*, 498 So. 2d 463, 465 (Fla. 3d DCA 1986), similarly provides that "[a]n act may be within the scope of employment although consciously criminal or tortious."  Restatement (Second) of Agency § 231 (ALI 1958).

Under the D.C. Circuit's approach, the question is whether the underlying conduct—and not the tortious act itself—was the kind of task the employee was hired to perform. *See Wuterich v. Murtha*, 562 F.3d 375, 384 (D.C. Cir. 2009). *See also Jacobs v. Vrobel*, 724 F.3d 217, 222 (D.C. Cir. 2013) (focusing on the "type of act [the defendant] took that allegedly gave rise to the tort, not the wrongful character of that act"). Here, accepting Omnipol's allegations as true, the federal defendants were civilian contracting officers at SOCOM who were charged with overseeing prime contracts for the purchase and delivery of weapons, ammunition, and related goods. They approved and issued a partial contract with Purple Shovel for the sale of weapons to the United States, and the weapons were in fact delivered. As the district court explained, such contracting endeavors were within the scope of the federal defendants' employment and were motivated in part by a purpose to serve the United States (the employer) even if the defendants (as alleged) were also involved in some fraudulent self-dealing. *See* D.E. 106 at 22–25. That seems eminently correct to me given Florida law on scope of employment. *See* Restatement (Second) of Agency § 231, comment a ("A servant selling goods for his master may cause the master to be liable in an action of deceit, although the servant was guilty of obtaining property by false pretenses in making the sale.").