[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 22-11198

Non-Argument Calendar

————————————————

REGINAL L. HOLSTON,

Plaintiff-Appellant,

*versus*

JACOB J. DAWSON,
Assistant Warden of Programs,
WARDEN,
ANNE OTWELL,
MARK HARRISS,
RYAN ENGLISH, et al.,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:21-cv-00202-SPC-NPM

_____

Before LAGOA, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Reginal Holston, a Florida prisoner proceeding *pro se*, appeals the district court's dismissal of his second amended complaint alleging federal and state claims of First Amendment retaliation, deliberate indifference to serious medical needs, medical negligence, violations of due process, false imprisonment, intentional infliction of emotional distress ("IIED"), conspiracy, and violations of Florida's Racketeer Influenced and Corrupt Organizations ("RICO") statute.   Although Holston contends on appeal that he sufficiently alleged each of the counts against each of the defendants, the facts he alleged amounted to speculation of violations of federal and state law based on his disagreements with the defendants' conduct and, thus, he did not plausibly allege that the defendants violated his rights.  In addition, Holston did not comply with Florida pre-suit requirements, so his claim of medical negligence was barred.  Accordingly, we affirm the district court's dismissal of his second amended complaint with prejudice.

## I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

Holston initially filed a *pro se* civil rights complaint in Florida state court against Ryan English, Colonel Mark Harriss, Nurse Anne Otwell, Jacob Dawson, and Derek Snider, who removed the case to the federal district court. Those defendants then moved to dismiss the complaint for failure to state a claim, and a magistrate judge ordered Holston to either respond to the motion or file an amended complaint.

Holston filed an amended complaint attached three documents as exhibits that would later be referenced throughout a second amended complaint and, ultimately, in the district court's order dismissing Holston's case. Two of the documents were recommendations for Holston to be placed on Close Management ("CM")[1] by nonparties named Smith and Cecilia, which stated that Holston was initially placed in CM due to one incident where Holston injured an officer's arm by pulling him into a shower and another incident where Holston swung a closed fist at another officer.

---

[1] CM is "the separation of an inmate apart from the general population, for reasons of security or the order and effective management of the institution, when the inmate, through his or her behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others." Fla. Admin. Code § 33-601.800(1)(a). There are three levels of CM: (1) CMI is the most restrictive single cell housing level; (2) CMII is in the middle; and (3) CMIII is the least restrictive. *Id.* § 33-601.800(1)(b), (2). The Institutional Classification Team conducts hearings and makes recommendation, which the State Classification Office approves, disapproves, or modifies. *Id.* § 33-601.800(3)(h), (i).

The third exhibit was English's disciplinary report accusing Holston of attempted extortion.

The district court dismissed Holston's amended complaint without prejudice because Holston had improperly sought to assert unrelated claims against several defendants. This dismissal prompted Holston to file a second amended complaint against Dawson, Snider, Nurse Otwell, Colonel Harriss, English, as well as Warden Lars Severson and Major A. Scarpati (collectively, the "Defendants"), which is the operative pleading in this case.

Holston alleged that, in December 2019, he was beaten and tortured by officers, which Colonel Harriss authorized and Warden Severson concealed. He was served with a notice of a CM recommendation based on him causing injury to another, and at the Institutional Classification Team ("ICT") hearing, ICT recommended he be placed in CMI. Holston was then served another notice but did not appear at the second ICT hearing.

Thereafter, Holston alleged that was transferred to another facility, at which English made it clear that he knew Colonel Harriss from Holston's previous facility because Colonel Harriss "used to be [English's] sergeant," and that Holston should expect retaliation at the new facility. Holston filed a grievance regarding English's retaliatory statements and Dawson, who reviewed the grievance, admitted that Holston was not present at the second ICT hearing but denied the grievance. At a six-month CM review hearing before the ICT, a nonparty named Brock, Major Scarpati, and Dawson conspired with Colonel Harriss to ratify the false

allegations regarding Holston's physical assault of the officers from nonparty Smith's CM recommendation. Dawson based his retaliatory decision to deny the formal grievance on nonparty Cecilia's CM recommendation after Holston engaged in free speech.

Holston further alleged that, after placing sick call requests, Holston visited Nurse Otwell, but she did not take his vital signs, argued with him about grievances he filed, and belittled him. He alleged that she falsified information in his medical files regarding his medical complaints as a form of retaliation.

Holston further alleged that he received a second CM review notice that omitted any reference to the attempted extortion, and at the ICT review, Dawson, Major Scarpati, and nonparty Brock were on the review panel. They colluded against him, along with Warden Severson, who denied a grievance Holston submitted challenging his continuation in CM without a 90-day review. After a second recommendation for reduction to CMIII with a 90-day review, English, Dawson, and Major Scarpati rejected the 90-day review with a conspiratorially retaliatory animus.

Based on the above allegations, Holston asserted 14 counts against varying Defendants. These claims included First Amendment retaliation claims in Counts 1 through 4; an Eighth Amendment deliberate indifference claim and state law medical negligence claim in Counts 5 and 11; procedural due process claims against in Counts 6 and 7; federal and state false imprisonment claims in Counts 8 and 12; an IIED claim in Count 10; 42 U.S.C.

§ 1983 conspiracy and common-law civil conspiracy claims in Counts 9 and 13; and a Florida RICO claim in Count 14.

Ultimately, the district court dismissed Holston's second amended complaint with prejudice for failure to state a claim. The court explained that Holston had already amended his complaint twice and that any future attempts to amend would be futile. Holston's appeal followed, in which he challenges the dismissal of each of his claims.

## II.    STANDARDS OF REVIEW

"We review *de novo* a district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Holland v. Carnival Corp.*, 50 F.4th 1088, 1093 (11th Cir. 2022) (internal quotation marks omitted) (quoting *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012)). Generally, we must accept as true the allegations in the complaint and construe them in the light most favorable to the plaintiff. *Id.* However, such direction is inapplicable to legal conclusions couched as factual allegations. *Id.*

To withstand a motion to dismiss for failure to state a claim, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Hunt v. Amico Prop., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when it contains facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* While we liberally construe *pro se* pleadings, *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), the

plaintiff's allegations must be more than mere labels, conclusions, or a formulistic recitation of the cause of action, *Hunt*, 814 F.3d at 1221. Finally, a district court may consider documents outside the four corners of the complaint when such information is central to the plaintiff's claim and the information's authenticity is undisputed. *Maxcess, Inc. v. Lucent Tech., Inc.*, 433 F.d3 1337, 1340 (11th Cir. 2005).

Generally, a *pro se* plaintiff must receive at least one opportunity to amend the complaint if he might be able to state a claim by doing so. *Woldeab v. Dekalb Cty. Bd. of Educ.*, 885 F.3d 1289, 1291-92 (11th Cir. 2018). However, a district court need not grant leave to amend where a more carefully drafted complaint could not state a claim. *Id.* at 1291. Leave to amend would be futile if the amended complaint would still fail to state a claim. *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020).

## III.    DISCUSSION

### A.  First Amendment Retaliation Claims

In his second amended complaint, Holston alleged four claims of First Amendment retaliation. In Count 1, he contended that Nurse Otwell's alleged false statements in his medical records were in retaliation for the grievances he filed regarding the conditions of his confinement during which he experienced swelling and pain in his abdomen and gastrointestinal complications. In Count 2, he alleged that Dawson and Major Scarpati kept him in CM based on their improper reliance on prison staff reports that falsely stated that he assaulted two officers. In Counts 3 and 4,

Holston alleged that Dawson, Major Scarpati, and Warden Severson failed to conduct a 90-day review of his CM detention in retaliation for filing grievances.

The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). To prevail on a First Amendment retaliation claim, a prisoner must show: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Id.*

A prisoner's complaints to prison administrators about the conditions of his confinement are protected speech. *Id.* Under the second element, we employ an objective test which allows for "weeding out" those claims for which complained of injuries are trivial or are no more than a "*de minimis* inconvenience in the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1253 (11th Cir. 2005). Finally, to establish causation the plaintiff must show that the defendant was subjectively motivated to discipline him because of complaints about his conditions of confinement. *Smith*, 532 F.3d at 1278.

Here, the district court properly dismissed with prejudice Holston's Counts 1 through 4. As to Count 1 against Nurse Otwell, Holston failed to sufficiently allege that he suffered an adverse action. The note Nurse Otwell wrote did not cause others to deny

Holston medical care, as evidenced by Holston's own allegations. Moreover, the note directly related to the ailments Holston complained of at that time. Thus, Holston failed to establish a causal connection between his alleged injuries and Nurse Otwell's actions. *Smith*, 532 F.3d at 1276.

To Count 2 against Dawson and Major Scarpati, Holston's claim again failed to establish causation between his alleged injuries and the defendants' actions. Specifically, Holston's allegations regarding the impact that the reports of other officers had on his placement in CMI is entirely speculative and insufficient to support a First Amendment retaliation claim. *Hunt*, 814 F.3d at 1221.

Finally, to Counts 3 and 4 against Dawson, Major Scarpati, and Warden Severson, Holston's claims do not establish that he suffered an adverse action or causation. First, the ICT's decisions were in Holston's favor because his CM restrictions were reduced. Second, as to causation, Holston's allegations do not support a finding that the defendants' decision to offer him a 180-day as opposed to 90-day review was motivated by his previous grievances. Any attempt to amend these claims would be futile, and we affirm the district court's dismissal of these claims with prejudice.

### B. *Deliberate Indifference to Medical Need Claims*

In Count 5, Holston alleged that Nurse Otwell violated the Eighth Amendment by refusing to treat an unspecified "serious medical condition" and wrote a note in his records instructing other medical personnel to deny him future treatments.

The Eighth Amendment prohibits a prison official from acting with deliberate indifference to a prisoner's serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on an Eighth Amendment deliberate indifference claim, a prisoner must satisfy an objective and subjective inquiry. *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020). Under the objective inquiry, the plaintiff must demonstrate that he had an "objectively serious medical need" that had either been diagnosed by a doctor as requiring treatment or was so obvious that a lay person would readily see the necessity for a doctor's attention. *Id.* Under either scenario, the medical need must be one that, if it were to be left unattended, would pose a substantial risk of serious harm. *Id.* Under the subjective prong, the plaintiff must show that the prison officials acted with a deliberate indifference to his medical needs, which requires the plaintiff to show that the officials "had a subjective knowledge of a risk of serious harm," they ignored that risk, and in ignoring the risk, acted with more than gross negligence. *Id.* (internal quotation marks omitted) (quoting *Harper v. Lawrence Cnty.*, 592 F.3d 1227, 1234 (11th Cir. 2010)).

"[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106. Instead, medical treatment only violates the Eighth Amendment "when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266

(11th Cir. 2020) (internal quotation marks omitted) (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)).

Here, the district court properly dismissed with prejudice Count 5. Holston's second amended complaint failed to allege what his "objectively serious medical condition" was at the time he saw Nurse Otwell. *Hoffer*, 973 F.3d at 1270. To the extent Count 5 is based on Nurse Otwell's alleged decision not to treat him which caused his stomach to swell, none of his allegations suggest the swelling was an objectively serious medical need. Finally, Holston failed to show that Nurse Otwell was deliberately indifferent to his swelling—his initial sick call request never mentioned gastrointestinal swelling, and when Holston did seek treatment for the condition, other medical professionals treated him. Because Holston cannot cure these pleading deficiencies, the district court properly dismissed this claim with prejudice.

### C. Medical Negligence Claims

Holston also alleged that Nurse Otwell negligently failed to properly assess him and refer him to a physician. The district court interpreted his complaint as raising a state-law medical negligence claim and dismissed it for failure to satisfy Florida's pre-suit requirements.

Florida courts will read a plaintiff's negligence claim as a claim alleging medical negligence when the claim arises out of the failure to render medical services. *See Indian River Mem'l Hosp. v. Browne*, 44 So. 3d 237, 238-39 (Fla. 4th Dist. Ct. App. 2010) (granting petitioner's writ of certiorari and holding that the plaintiff's

complaint for negligence was really a claim for medical negligence because the claim arose out of the rendering of or failure to render medical care); *see also* Fla. Stat. § 766.106(1)(a) (defining a claim for medical negligence as "a claim, arising out of the rendering of, or the failure to render, medical care or services.").

To sufficiently allege a medical negligence claim, the plaintiff must allege the following: (1) the defendant owed the plaintiff a standard of care; (2) the defendant breached that standard; and (3) the breach proximately caused the plaintiff's damages. *Hollywood Med. Ctr., Inc. v. Alfred*, 82 So. 3d 122, 125 (Fla. 4th Dist. Ct. App. 2012) (applying medical malpractice elements to a medical negligence claim). In a medical negligence action, the burden is on the plaintiff to establish the physician-defendant's actions breached prevailing professional standards of care. *Dockswell v. Bethesda Mem'l Hosp., Inc.*, 210 So. 3d 1201, 1206-07 (Fla. 2017) (quoting Fla. Stat. § 766.102(1)).

Importantly, Florida law imposes conditions precedent for any lawsuit "arising out of the rendering of, or the failure to render, medical care or services," such as notifying the defendant of the intent to initiate litigation and a pre-suit investigation. Fla. Stat. § 766.106(1)(a), (2)(a). Before a claimant can bring a medical negligence claim under Florida law, the claimant must comply with these pre-suit requirements. *Shands Jacksonville Med. Ctr., Inc. v. Pusha*, 254 So. 3d 1076, 1081 (Fla. 1st Dist. Ct. App. 2018).

As an initial matter, the district court properly construed Holston's negligence claim as a claim for medical negligence

because the claim arose out of Nurse Otwell's rendering of, or alleged failure to render, medical care. *Indian River Mem'l Hosp.*, 44 So. 3d at 238-39. Thus, Holston had to comply with Florida's pre-suit requirements to properly bring this claim. In his second amended complaint, Holston merely stated that all conditions precedent had been satisfied which is a legal conclusion not entitled to a presumption of truth. *Holland*, 50 F.4th at 1093. He otherwise made no representation in his second amended complaint that he satisfied Florida's pre-suit requirements for medical negligence claims.

Even if Holston had satisfied Florida's pre-suit requirements, he still failed to allege a causal connection between his gastrointestinal issues and any action on Nurse Otwell's part. Moreover, he did not show that Nurse Otwell proximately caused his gastrointestinal problems, nor can Nurse Otwell's note in Holston's medical records be read as a directive to future health care providers to not provide Holston future treatment. Thus, he has failed to satisfy the third element of a medical negligence claim. The district court properly dismissed this claim with prejudice as well.

### D. *Procedural Due Process Claims*

In Counts 6 and 7, Holston brought procedural due process claims against Dawson and Colonel Harriss. To Count 6 against Dawson, Holston alleged that Dawson improperly denied the grievance Holston filed related to his CM detention, a decision which, at least in part, was based on evidence Holston disputed. In Count 7 against Colonel Harriss, he alleged that Harriss violated

his due process rights by rehearing Holston's grievance without Holston present.

To assert a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must allege: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003) (citing *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)). Incarcerated individuals have "no constitutionally-protected liberty interest in access to" a prisoner internal grievance procedure. *Bingham v. Thomas*, 645 F.3d 1171, 1177 (11th Cir. 2011).

However, a prisoner has a protected liberty interest that would entitle him to procedural due process protections in two circumstances. *Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1347 (11th Cir. 2016). First, he is entitled to "procedural due process when an increased restraint 'exceeds his sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force.'" *Id.* (brackets omitted) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Second, he is entitled to "procedural due process when a change in his conditions of confinement 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin*, 515 U.S. at 484)). Thus, incarcerated individuals have a due process right to a hearing prior to being punished for violating prison rules if "the punishment is demonstrably harsher than the ordinary conditions of

prison life. This is because these inmates are already subject to punishment on account of their convictions and sentences." *Id.*

However, the Supreme Court in *Wolff v. McDonnell* recognized that a state statute could create a liberty interest, separate from the Due Process Clause, where a statutory provision provided for a shortened prison sentence based on good time credits which were revocable if the prisoner was found guilty of serious misconduct. 418 U.S. 539, 557 (1974). Florida law provides inmates with the possibility to receive ten days of gain time for each month of the sentence as a means of encouraging satisfactory behavior and gain-time may be forfeited when the person violates the rules of the Department of Corrections. Fla. Stat. § 944.275(4)(a), (5).

When a constitutionally-protected liberty interest exists for a disciplinary hearing in a prison, the prison must give the prisoner: "(1) advance written notice of the charges; (2) a written statement of the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present evidence 'when permitting him to do so [would] not be unduly hazardous to institutional safety or correctional goals.'" *Jacoby*, 835 F.3d at 1350 (quoting *Wolff*, 418 U.S. at 564-66).

Here, the district court properly dismissed with prejudice Counts 6 and 7. As an initial matter, Holston has not established that his placement in CM impacted his ability to receive gain-time, and it has not been established that the hearings before the ICT implicate procedural due process protections, meaning Counts 6 and 7 were properly dismissed for that reason. Nevertheless, as to

Count 6 against Dawson, to the extent Holston's claim involves the CM hearing, to which he was procedurally entitled under *Wolff*, his claim fails because he does not allege that the CM hearing itself was procedurally inadequate. Additionally, to the extent Holston contests Dawson's denial of his grievance, the denial was not so atypical or harsh as to entitle Holston to heightened due process protections. *Bingham*, 645 F.3d at 1177.

As to Count 7 against Colonel Harriss, Holston's claim was based on an ICT hearing where the ICT met to correct a typographical error, not to worsen Holston's conditions of confinement. Thus, Holston failed to allege a protected liberty interest based on either increased restraint or a change in confinement conditions at stake at the hearing where the ICT met to merely correct a typographical error. *Jacoby*, 835 F.3d at 1347. Because any attempt to amend these claims would also be futile, the district court properly dismissed this claim with prejudice.

### E. *False Imprisonment Claims*

Next, Holston alleged two counts of false imprisonment against Colonel Harriss, Dawson, English, Warden Severson, and Major Scarpati, based on his placement in CM.

A claim of false imprisonment under 42 U.S.C. § 1983 "requires a showing of common law false imprisonment and a due process violation under the Fourteenth Amendment." *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009). A valid conviction deprives a criminal defendant "of his liberty to the extent that the State may confine him and subject him to the rules of its prison

system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976).

Under Florida law, a "plaintiff must establish four elements to prevail on a false imprisonment claim: (1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or color of authority; and (4) which is unreasonable and unwarranted under the circumstances." *City of Boca Raton v. Basso*, 242 So. 3d 1141, 1143 (Fla. 4th Dist. Ct. App. 2018) (quotation marks omitted). A lawful detention cannot be considered false imprisonment. *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1116 (11th Cir. 2006).

Here, Holston is clearly confined within the Florida prison system due to a valid criminal conviction, the prison officials have authority to place Holston within CM, and Holston has established no separate violation related to his CM detention. Thus, the district court properly dismissed with prejudice Counts 8 and 12.

### F. Intentional Infliction of Emotional Distress Claims

In Count 10, Holston alleged that Colonel Harriss, Dawson, English, Major Scarpati, Nurse Otwell, and Warden Severson inflicted intentional emotional distress by denying him medical care and recommending that he be housed in CM. The district court dismissed this claim because Holston's claims failed to allege

outrageous conduct under Florida law, and it alternatively concluded that his claim was barred pursuant to 42 U.S.C. § 1997e(e). [2]

Under Florida law, to state a claim for intentional infliction of emotional distress, the plaintiff must allege: "(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe." *Thomas v. Hosp. Bd. Of Dirs.*, 41 So. 3d 246, 256 (Fla. 2d Dist. Ct. App. 2010) (internal quotation marks omitted) (quoting *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 594 (Fla. 2d Dist. Ct. App. 2007)). Outrageous conduct is behavior that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Byrd v. BT Foods, Inc.*, 948 So. 2d 921, 928 (Fla. 4th Dist. Ct. App. 2007) (quoting *Allen v. Walker*, 810 So. 2d 1090, 1091 (Fla. 4th Dist. Ct. App. 2002)).

Here, the district court properly dismissed with prejudice this count. Notwithstanding the district court's alternative ruling regarding the applicability of § 1997e(e), the dismissal was proper because Holston failed to allege any kind of "outrageous conduct." Accepting Holston's allegations as true, none of the Defendants'

---

[2] On appeal, Nurse Otwell continues argue that Count 10 is procedurally barred under § 1997e(e). However, we will not reach this issue because we affirm the district court's dismissal on other grounds supported by the record. *See Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097 (11th Cir. 2021) (holding that this Court may affirm a district court decision for any reason supported by the record).

actions can be interpreted as "extreme" or as going "beyond all possible bounds of decency" to be considered "atrocious." *Id.*

### G.  Federal & State Conspiracy Claims

In Counts 9 and 13, Holston alleged that Colonel Harriss, Dawson, English, Major Scarpati, Nurse Otwell, and Warden Severson conspired against him to violate his Eighth, Fourth, and Fourteenth Amendment rights.

To adequately state a claim for a conspiracy under § 1983, the "plaintiff must allege that (1) the defendants reached an understanding or agreement that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his constitutional rights." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1327 (11th Cir. 2015).

Under Florida law, there is no freestanding cause of action for a civil conspiracy. *Tejera v. Lincoln Lending Servs., LLC*, 271 So. 3d 97, 103 (Fla. 3d Dist. Ct. App. 2019). Thus, to state a claim for a civil conspiracy, the "plaintiff must allege and underlying independent tort. The conspiracy is merely the vehicle by which the underlying tort was committed." *Id.* Where the counts regarding the goals of the conspiracy fail, the conspiracy count must also fail. *Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1096 (Fla. 4th Dist. Ct. App. 2009). Here, the district court properly dismissed with prejudice these counts because, as explained above, his underlying constitutional and state law tort claims already fail.

### H.  Florida RICO Claims

Finally, Holston asserted a Florida RICO claim against Dawson, Snider, Major Scarpati, and Warden Severson, accusing them of seven distinct wrongdoings: (1) not serving him coffee for 372 days; (2) imposing restrictions on other inmates "for any or no reason at all," depriving them of the use of their property; (3) concealing inmate violence; (4) falsely reporting that Holston attempted to extort English; (5) encouraging Smith to falsify Holston's CM recommendation; (6) relying on a false CM report in a CM recommendation; and (7) including false information in a CM recommendation.

To sufficiently allege a Florida RICO claim, which is analyzed under the same standards as federal RICO claims, the plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1308 (11th Cir. 2022) (internal quotation marks and citation omitted).  An "enterprise" is any individual or group of individuals associated in fact.  Fla. Stat. § 895.02(5).  Committing a "racketeering activity" means someone is committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person into committing the crimes outlined in the statute.  Fla. Stat. § 895.02(8)(a).

Here, the district court properly dismissed with prejudice Count 14 because he failed to allege facts supporting the conclusion that Dawson, Snider, Major Scarpati, or Warden Severson

22-11198            Opinion of the Court            21

participated in any behavior that would qualify as racketeering activity under Florida law.

### IV.    CONCLUSION

For the reasons outlined above, we **AFFIRM** the district court's dismissal with prejudice of Holston's second amended complaint. [3]

---

[3] Holston also moved this Court for leave to file a single copy of his reply brief, which is GRANTED.